# WILL, U. S. DISTRICT JUDGE *v.* CALVERT FIRE INSURANCE CO. ET AL.

No. 77–693. Argued April 19, 1978—Decided June 23, 1978

REHNQUIST, J., announced the Court's judgment and delivered an opinion, in which STEWART, WHITE, and STEVENS, JJ., joined. BLACKMUN, J., filed an opinion concurring in the judgment, *post*, p. 667. BURGER, C. J., filed a dissenting opinion, *post*, p. 668. BRENNAN, J., filed a dissenting opinion, in which BURGER, C. J., and MARSHALL and POWELL, JJ., joined, *post*, p. 668.

*Milton V. Freeman* argued the cause for petitioner. With him on the briefs were *Dennis G. Lyons, Werner J. Kronstein,* and *Stanley A. Kaplan.*

*Louis Loss* argued the cause for respondent Calvert Fire Insurance Co. With him on the brief was *Michael L. Weissman. Thomas J. Weithers* and *D. Kendall Griffith* filed a brief for American Mutual Reinsurance Co., respondent under this Court's Rule 21 (4), in support of petitioner.

MR. JUSTICE REHNQUIST announced the judgment of the Court, and delivered an opinion in which MR. JUSTICE STEWART, MR. JUSTICE WHITE, and MR. JUSTICE STEVENS joined.

On August 15, 1977, the Court of Appeals for the Seventh Circuit granted a petition for writ of mandamus ordering petitioner, a judge of the United States District Court for the Northern District of Illinois, "to proceed immediately" to adjudicate a claim based upon the Securities Exchange Act of 1934 and brought by respondent, Calvert Fire Insurance Co., against American Mutual Reinsurance Co., despite the pendency of a substantially identical proceeding between the same parties in the Illinois state courts. 560 F. 2d 792, 797. The Court of Appeals felt that our recent decision in *Colorado River Water Conservation Dist. v. United States,* 424 U. S. 800 (1976), compelled the issuance of the writ. We granted

certiorari to consider the propriety of the use of mandamus to review a District Court's decision to defer to concurrent state proceedings, 434 U. S. 1008, and we now reverse.

I

Respondent Calvert writes property and casualty insurance. American Mutual operates a reinsurance pool whereby a number of primary insurers protect themselves against unanticipated losses. Membership in the pool requires both the payment of premiums by pool members and indemnification of the pool in the event that losses exceed those upon which the premiums are calculated. Calvert joined the pool in early 1974, but in April of that year notified American Mutual of its election to rescind the agreement by which it became a member.

In July 1974, American Mutual sued in the Circuit Court of Cook County, Ill., to obtain a declaration that the pool agreement between it and Calvert was in full force and effect. Six months later, Calvert in its answer to that suit asserted that the pool agreement was not enforceable against it because of violations by American Mutual of the Securities Act of 1933, the Securities Exchange Act of 1934, the Illinois Securities Act, the Maryland Securities Law, and the state common law of fraud. With its answer Calvert filed a counterclaim seeking $2 million in damages from American Mutual on all of the grounds that it set up in defense except for the defense based on the Securities Exchange Act of 1934. Since § 27 of that Act, 48 Stat. 902, as amended, 15 U. S. C. § 78aa (1976 ed.), granted the district courts of the United States exclusive jurisdiction to enforce the Act, Calvert on the same day filed a complaint in the United States District Court for the Northern District of Illinois seeking damages from American Mutual for an alleged violation of Rule 10b–5, 17 CFR § 240.10b–5 (1977), issued under § 10 (b) of the Act, 15 U. S. C. § 78j (b) (1976 ed.). Joined with this Rule 10b–5

count were claims based on each of the other grounds asserted by it in defense to American Mutual's state-court action.

In February 1975, more than seven months after it had begun its state-court action, but less than one month after Calvert had filed its answer and counterclaim in that action and its complaint in the federal court, American Mutual moved to dismiss or abate the latter. The claim for dismissal was based on the substantive assertion that the reinsurance agreement was not a "security" within the meaning of the 1933 or 1934 Act. The motion to abate was based on the fact that the state proceedings commenced six months before the federal proceedings included every claim and defense except the claim for damages based on Rule 10b–5 under the 1934 Act.

In May 1975, Judge Will substantially granted American Mutual's motion to defer the federal proceeding until the completion of the state proceedings, observing that a tentative trial date had already been set by the state court. Federal litigation of the same issues would therefore be duplicative and wasteful. He rejected Calvert's contention that the court should proceed with the entire case because of its exclusive jurisdiction under the 1934 Act, noting that the state court was bound to provide the equitable relief sought by Calvert by recognizing a valid Rule 10b–5 claim as a defense to the state action.[1] Only Calvert's claim for damages under Rule 10b–5 was subject to the exclusive jurisdiction of the federal court. Petitioner therefore stayed all aspects of Calvert's federal action subject to the concurrent jurisdiction of both courts, recognizing "only Calvert's very limited claim for

---

[1] Calvert's answer in the state action explicitly contended that it was "entitled to rescission of its purchase of the aforesaid security" because of the alleged Rule 10b–5 violation. App. to Pet. for Cert. D–5. It sought identical equitable relief in its federal complaint. *Id.*, at E–6. See *Weiner* v. *Shearson, Hammill & Co.*, 521 F. 2d 817, 822 (CA9 1975); *Aetna State Bank* v. *Altheimer*, 430 F. 2d 750, 754 (CA7 1970).

monetary damages under the 1934 Securities Act as a viable claim in this court." App. to Pet. for Cert. B–9. On May 9, 1975, Judge Will heard oral argument on the basic question of whether Calvert's interest in the reinsurance pool is a security within the meaning of the 1934 Act. He has not yet rendered a decision on that issue.[2]

Judge Will rejected two motions to reconsider his stay order and refused to certify an interlocutory appeal pursuant to 28 U. S. C. § 1292 (b). On May 26, 1976, Calvert petitioned the Court of Appeals for the Seventh Circuit for a writ of mandamus directing Judge Will to proceed to adjudicate its Rule 10b–5 claims.[3] Nearly 14 months later, on August 15, 1977, the Court of Appeals granted the petition and directed Judge Will to "proceed immediately with Calvert's claim for damages and equitable relief under the Securities Exchange Act of 1934." 560 F. 2d, at 797.[4]

---

[2] The state court, however, has reached a decision on the issue. The Circuit Court concluded that the agreement was not a security, and therefore struck the federal issues from Calvert's answer and counterclaim. On an interlocutory appeal the Illinois Appellate Court affirmed, holding that the agreement was not a security within the meaning of either the 1933 or the 1934 Act and that, in any event, § 2 (b) of the McCarran-Ferguson Act, 15 U. S. C. § 1012 (b) (1976 ed.), exempted insurance from the reach of the federal securities laws. *American Mutual Reinsurance Co.* v. *Calvert Fire Ins. Co.*, 52 Ill. App. 3d 922, 367 N. E. 2d 104 (1977), pet. for leave to appeal denied, No. 50,085 (Jan. 26, 1978), cert. denied, 436 U. S. 906 (1978).

[3] As already noted, the stay order did not apply to Calvert's claim for damages under Rule 10b–5. Judge Will had stayed Calvert's claim for equitable relief because the state court had jurisdiction to rescind the agreement by recognition of a Rule 10b–5 defense.

The petition did not seek to require Judge Will to proceed with the state-law claims or the federal claim based on the 1933 Act. 560 F. 2d 792, 794 n. 2.

[4] Although Calvert's petition addressed only its Rule 10b–5 claims, the court went on to note: "The logic behind our holding in this case supports the conclusion that the stay of 1933 Act claims, as well as the 1934 Act claims, was improper." 560 F. 2d, at 797 n. 6.

We granted certiorari to consider Judge Will's contention that the issuance of the writ of mandamus impermissibly interfered with the discretion of a district court to control its own docket.   434 U. S. 1008 (1978).

## II

The correct disposition of this case hinges in large part on the appropriate standard of inquiry to be employed by a court of appeals in determining whether to issue a writ of mandamus to a district court.   On direct appeal, a court of appeals has broad authority to "modify, vacate, set aside or reverse" an order of a district court, and it may direct such further action on remand "as may be just under the circumstances." 28 U. S. C. § 2106.   By contrast, under the All Writs Act, 28 U. S. C. § 1651 (a), courts of appeals may issue a writ of mandamus only when "necessary or appropriate in aid of their respective jurisdictions."   Whereas a simple showing of error may suffice to obtain a reversal on direct appeal, to issue a writ of mandamus under such circumstances "would undermine the settled limitations upon the power of an appellate court to review interlocutory orders."   *Will* v. *United States*, 389 U. S. 90, 98 n. 6 (1967).

As we have repeatedly reaffirmed in cases such as *Kerr* v. *United States District Court*, 426 U. S. 394, 402 (1976), and *Bankers Life & Cas. Co.* v. *Holland*, 346 U. S. 379, 382 (1953), the "traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche* v. *Evaporated Milk Assn.*, 319 U. S. 21, 26 (1943).   Calvert makes no contention that petitioner has exceeded the bounds of his jurisdiction.   Rather, it contends that the District Court, in entering the stay order, has refused "to exercise its authority when it is its duty to do so." *Ibid.*   There can be no doubt that, where a district

court persistently and without reason refuses to adjudicate a case properly before it, the court of appeals may issue the writ "in order that [it] may exercise the jurisdiction of review given by law." *Insurance Co.* v. *Comstock,* 16 Wall. 258, 270 (1873). "Otherwise the appellate jurisdiction could be defeated and the purpose of the statute authorizing the writ thwarted by unauthorized action of the district court obstructing the appeal." *Roche, supra,* at 25.[5]

To say that a court of appeals has the power to direct a district court to proceed to judgment in a pending case "when it is its duty to do so," 319 U. S., at 26, states the standard but does not decide this or any other particular case. It is essential that the moving party satisfy "the burden of showing that its right to issuance of the writ is 'clear and indisputable.'" *Bankers Life & Cas. Co., supra,* at 384, quoting *United States* v. *Duell,* 172 U. S. 576, 582 (1899). Judge Will urges that Calvert does not have a "clear and indisputable" right to the adjudication of its claims in the District Court without regard to the concurrent state proceedings. To that issue we now must turn.

## III

It is well established that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan* v. *Carland,* 217 U. S. 268, 282 (1910). It is equally well settled that a district court is "under no compulsion to exercise that jurisdiction," *Brillhart* v. *Excess Ins. Co.,* 316 U. S. 491,

---

[5] A classic example of the proper issuance of the writ to protect eventual appellate jurisdiction is *Thermtron Products, Inc.* v. *Hermansdorfer,* 423 U. S. 336 (1976), in which a case had been remanded to the state courts on grounds utterly unauthorized by the controlling statute. The dissenters in that case urged that Congress had intended to bar *all* review of remand orders, not that mandamus would have been inappropriate absent such a bar. *Id.,* at 354 (REHNQUIST, J., joined by BURGER, C. J., and STEWART, J., dissenting).

494 (1942), where the controversy may be settled more expeditiously in the state court. Although most of our decisions discussing the propriety of stays or dismissals of duplicative actions have concerned conflicts of jurisdiction between two federal district courts, e. g., *Kerotest Mfg. Co.*, v. *C–O–Two Fire Equipment Co.*, 342 U. S. 180 (1952); *Landis* v. *North American Co.*, 299 U. S. 248 (1936), we have recognized the relevance of those cases in the analogous circumstances presented here. See *Colorado River*, 424 U. S., at 817–819. In both situations, the decision is largely committed to the "carefully considered judgment," *id.*, at 818, of the district court.

This power has not always been so clear. In *McClellan*, on facts similar to those presented here, this Court indicated that the writ might properly issue where the District Court had stayed its proceedings in deference to concurrent state proceedings.[6] Such an automatic exercise of authority may well have been appropriate in a day when Congress had authorized fewer claims for relief in the federal courts, so that duplicative litigation and the concomitant tension between state and federal courts could rarely result. However, as the overlap between state claims and federal claims increased, this Court soon recognized that situations would often arise when it would be appropriate to defer to the state courts.

> "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law,

---

[6] This Court there held, not that the writ should issue, but that the Court of Appeals should have required the District Judge to show cause why the writ should not issue. Judge Carland presented an affidavit to this Court attempting to defend his stay order on the basis of substantially completed state proceedings. As that affidavit was not in the record before the Court of Appeals, this Court did not "pass upon the sufficiency of those proceedings to authorize the orders in question," 217 U. S., at 283, but directed the Court of Appeals to do so in the first instance.

between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart, supra,* at 495.

The decision in such circumstances is largely committed to the discretion of the district court. 316 U. S., at 494. Furthermore, *Colorado River, supra,* at 820, established that such deference may be equally appropriate even when matters of substantive federal law are involved in the case.

It is true that *Colorado River* emphasized "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." 424 U. S., at 817. That language underscores our conviction that a district court should exercise its discretion with this factor in mind, but it in no way undermines the conclusion of *Brillhart* that the decision whether to defer to the concurrent jurisdiction of a state court is, in the last analysis, a matter committed to the district court's discretion. Seizing upon the phrase "unflagging obligation" in an opinion which *upheld* the correctness of a district court's *final decision* to dismiss because of concurrent jurisdiction does little to bolster a claim for the extraordinary writ of mandamus in a case such as this where the District Court has rendered no final decision.

We think it of considerably more importance than did the Court of Appeals that *Colorado River* came before the Court of Appeals on appeal pursuant to 28 U. S. C. § 1291 following outright dismissal of the action by the District Court, rather than through an effort on the part of the federal-court plaintiff to seek mandamus. Calvert contends here, and the Court of Appeals for the Seventh Circuit agreed, that Judge Will's order deferring the federal proceedings was "equivalent to a dismissal." 560 F. 2d, at 796. We are loath to rest our analysis on this ubiquitous phrase, for if used carelessly or without a precise definition it may impede rather than assist sound resolution of the underlying legal issue.

Obviously, if Judge Will *had* dismissed Calvert's action Calvert could have appealed the order of dismissal to the Court of Appeals, which could have required such action of Judge Will "as may be just under the circumstances." 28 U. S. C. § 2106. Since he did not dismiss the action, Calvert remained free to urge reconsideration of his decision to defer based on new information as to the progress of the state case; to this extent, at least, deferral was *not* "equivalent to a dismissal."

There are sound reasons for our reiteration of the rule that a district court's decision to defer proceedings because of concurrent state litigation is generally committed to the discretion of that court. No one can seriously contend that a busy federal trial judge, confronted both with competing demands on his time for matters properly within his jurisdiction and with inevitable scheduling difficulties because of the unavailability of lawyers, parties, and witnesses, is not entrusted with a wide latitude in setting his own calendar. Had Judge Will simply decided on his own initiative to defer setting this case for trial until the state proceedings were completed, his action would have been the "equivalent" of granting the motion of American Mutual to defer, yet such action would at best have afforded Calvert a highly dubious claim for mandamus. We think the fact that the judge accomplished this same result by ruling favorably on a party's motion to defer does not change the underlying legal question.

Although the District Court's exercise of its discretion may be subject to review and modification in a proper interlocutory appeal, cf. *Landis*, 299 U. S., at 256–259, we are convinced that it ought not to be overridden by a writ of mandamus.[7] Where

---

[7] Although in at least one instance we approved the issuance of the writ upon a mere showing of abuse of discretion, *La Buy* v. *Howes Leather Co.*, 352 U. S. 249, 257 (1957), we warned soon thereafter against the dangers of such a practice. "Courts faced with petitions for the peremptory writs must be careful lest they suffer themselves to be misled by labels such as 'abuse of discretion' and 'want of power' into interlocutory review of non-

a matter is committed to the discretion of a district court, it cannot be said that a litigant's right to a particular result is "clear and indisputable." [8]

Calvert contends that a district court is without power to stay proceedings, in deference to a contemporaneous state action, where the federal courts have exclusive jurisdiction over the issue presented. Whether or not this is so, petitioner has not purported to stay consideration of Calvert's claim for damages under the Securities Exchange Act of 1934, which is the *only* issue which may not be concurrently resolved by both courts.[9] It is true that petitioner has not yet ruled upon this claim. Where a district court obstinately refuses to adjudicate a matter properly before it, a court of appeals may issue the writ to correct "unauthorized action of the district

---

appealable orders on the mere ground that they may be erroneous." *Will* v. *United States,* 389 U. S. 90, 98 n. 6 (1967).

*Beacon Theatres, Inc.* v. *Westover,* 359 U. S. 500 (1959), is not to the contrary. Both the Court and the dissenters agreed that mandamus should issue to protect a clear right to a jury trial. *Id.,* at 511; *ibid.* (STEWART, J., dissenting). The Court simply concluded that it was "not permissible," *id.,* at 508, for the District Court to postpone a jury trial until after most of the relevant issues had been settled in an equitable action before the court. Here, we have repeatedly recognized that it is permissible for a district court to defer to the concurrent jurisdiction of a state court.

[8] That a litigant's right to proceed with a duplicative action in a federal court can never be said to be "clear and indisputable" is made all the more apparent by our holding earlier this Term in *General Atomic Co.* v. *Felter,* 434 U. S. 12 (1977), that a state court lacks the power to restrain vexatious litigation in the federal courts. There, we reaffirmed the principle that "[f]ederal courts are fully capable of preventing their misuse for purposes of harassment." *Id.,* at 19.

[9] The only other issue encompassed by the writ was Calvert's Rule 10b–5 claim for equitable relief. It is not disputed here that the state court has jurisdiction to rescind the agreement as Calvert requests. That being conceded, we find no merit in Calvert's further argument that the statutory grant of exclusive jurisdiction in any way distinguishes this aspect of the case from our earlier decisions in which both the state and federal courts had power to grant the desired relief.

court obstructing the appeal." *Roche,* 319 U. S., at 25, citing *Ex parte United States,* 287 U. S. 241 (1932). Calvert, however, has neither alleged nor proved such a heedless refusal to proceed as a basis for the issuance of the writ here. Its petition offers only the bare allegation that Judge Will "in effect" abated the damages claim in deference to the state proceedings. App. 12. Judge Will has never issued such an order, and the sparse record before us will not support any such inference. So far as appears, the delay in adjudicating the damages claim is simply a product of the normal excessive load of business in the District Court, compounded by "the unfortunate consequence of making the judge a litigant" in this mandamus proceeding. *Ex parte Fahey,* 332 U. S. 258, 260 (1947).

The judgment of the Court of Appeals is therefore

*Reversed.*

MR. JUSTICE BLACKMUN, concurring in the judgment.

The plurality's opinion, *ante,* at 662–663, appears to me to indicate that it now regards as fully compatible the Court's decisions in *Brillhart* v. *Excess Ins. Co.,* 316 U. S. 491 (1942), a diversity case, and *Colorado River Water Conservation Dist.* v. *United States,* 424 U. S. 800 (1976), a federal-issue case. I am not at all sure that this is so. I—as were MR. JUSTICE STEWART and MR. JUSTICE STEVENS—was in dissent in *Colorado River,* and if the holding in that case is what I think it is, and if one assumes, as I do not, that *Brillhart* has any application here, the Court cut back on Mr. Justice Frankfurter's rather sweeping language in *Brillhart,* 316 U. S., at 494–495.*

---

*"Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, it was under no compulsion to exercise that jurisdiction. The petitioner's motion to dismiss the bill was addressed to the discretion of the court. . . . The motion rested upon the claim that, since another proceeding was pending in a state court in which all the matters in controversy between the parties could be fully adjudicated, a declaratory judgment in the federal court was unwarranted. The correctness of this claim was certainly relevant in determining whether

Because Judge Will's stay order was issued prior to this Court's decision in *Colorado River,* and he therefore did not have such guidance as that case affords in the area, I join in the Court's reversal of the Court of Appeals' issuance of a writ of mandamus. The issuance was premature. The Court of Appeals should have done no more than require reconsideration of the case by Judge Will in light of *Colorado River.*

MR. CHIEF JUSTICE BURGER, dissenting.

I am in general agreement with MR. JUSTICE BRENNAN's dissenting opinion. I write separately only to emphasize that I consider it unnecessary to determine in the context of this case whether it would ever be appropriate to give res judicata effect to a state-court judgment implicating a claim over which the federal courts have been given exclusive jurisdiction. Our concern here is simply with the propriety of a federal court's delaying adjudication of such a claim in deference to a state-court proceeding. As MR. JUSTICE BRENNAN correctly notes, whatever the proper resolution of the res judicata issue, a federal court remains under an obligation to expeditiously consider and resolve those claims which Congress explicitly reserved to the federal courts. With this minor caveat, I join MR. JUSTICE BRENNAN in his dissent.

MR. JUSTICE BRENNAN, with whom THE CHIEF JUSTICE, MR. JUSTICE MARSHALL, and MR. JUSTICE POWELL join, dissenting.

This case falls within none of the three general abstention categories, and the opinion of my Brother REHNQUIST there-

the District Court should assume jurisdiction and proceed to determine the rights of the parties. Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."

fore strains to bring it within the principles that govern in a very narrow class of "exceptional" situations that involve "the contemporaneous exercise of concurrent jurisdictions." *Colorado River Water Conservation Dist.* v. *United States,* 424 U. S. 800, 813–818 (1976). In so straining, the opinion reaches a result supported by neither policy nor precedent, ignores difficult legal issues, misapprehends the significance of the proceedings below, and casts doubt upon a decision that has stood unquestioned for nearly 70 years. Moreover, there lurks an ominous potential for the abdication of federal-court jurisdiction in the opinion's disturbing indifference to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *id.,* at 817—for obedience to that obligation becomes all the more important when, as here, Congress has made that jurisdiction *exclusive.* I dissent.

I

Because this case came to the Court of Appeals on respondent Calvert Fire Insurance Co.'s motion for a writ of mandamus to compel Judge Will to adjudicate its claims for damages and equitable relief under the Securities Exchange Act of 1934 (1934 Act), I agree with my Brother REHNQUIST that it is essential to determine precisely what obligation the District Court had to adjudicate respondent's 1934 Act claims. That, however, is as far as my agreement goes.

On the same day Calvert filed its answer to the state suit instituted against it—an answer containing a defense under the 1934 Act that the state court was required to recognize under the Supremacy Clause—it commenced an action in Federal District Court seeking relief under the 1934 Act, the Securities Act of 1933, and various state provisions. The District Court stayed all claims alleged in this complaint, other than Calvert's claim for money damages under Rule 10b–5 of the 1934 Act, pending the outcome of the state suit. Although the District Court did not formally stay the Rule 10b–5 damages claim and heard oral argument on the primary

issue underlying the claim—whether a participatory interest in a reinsurance pool is a "security"—the District Court has yet to rule on this issue, so Calvert's Rule 10b–5 damages claim, like the rest of its federal suit, remains in suspension.

Section 27 of the 1934 Act, 15 U. S. C. § 78aa (1976 ed.), gives the federal courts *exclusive* jurisdiction over claims arising under the Act. This jurisdictional grant evinces a legislative desire for the uniform determination of such claims by tribunals expert in the administration of federal laws and sensitive to the national concerns underlying them. When Congress thus mandates that only federal courts shall exercise jurisdiction to adjudicate specified claims, the "well established" principle [1]—accepted by my Brother REHNQUIST, *ante*, at 662—of *McClellan* v. *Carland,* 217 U. S. 268, 282 (1910), that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," governs *a multo fortiori.* Yet, relying on the completely inapposite case of *Brillhart* v. *Excess Insurance Co.,* 316 U. S. 491 (1942), the opinion of my Brother REHNQUIST disregards the *McClellan* principle and all but ignores the analysis set forth in *Colorado River Water Conservation Dist.* v. *United States, supra,* our most recent pronouncement on a district court's authority to defer to a contemporaneous state proceeding.

In *Brillhart,* the District Court dismissed a diversity suit for a declaratory judgment because of the pendency in state court of a suit between the same parties and involving the same subject matter. The Court of Appeals reversed, holding that the dismissal was an abuse of discretion. In reversing the Court of Appeals, this Court reasoned:

> "Although the District Court *had jurisdiction of the suit under the Federal Declaratory Judgments Act, it*

---

[1] See, *e. g., Thermtron Products, Inc.* v. *Hermansdorfer,* 423 U. S. 336, 344–345 (1976); *Meredith* v. *Winter Haven,* 320 U. S. 228, 234–235 (1943).

*was under no compulsion to exercise that jurisdiction.* The petitioner's motion to dismiss the bill was addressed to the discretion of the court. *Aetna Casualty Co. v. Quarles,* 92 F. 2d 321; *Maryland Casualty Co. v. Consumers Finance Service,* 101 F. 2d 514; *American Automobile Ins. Co. v. Freundt,* 103 F. 2d 613 . . . . The motion rested upon the claim that, since another proceeding was pending in a state court in which all the matters in controversy between the parties could be fully adjudicated, a *declaratory judgment* in the federal court was unwarranted. The correctness of this claim was certainly relevant in determining whether the District Court should assume jurisdiction and proceed to determine the rights of the parties. Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed *in a declaratory judgment suit* where another suit is pending in a state court presenting the same issues, *not governed by federal law,* between the same parties." *Brillhart* v. *Excess Insurance Co., supra,* at 494–495 (emphasis added).

As is readily apparent, crucial to this Court's approval of the District Court's dismissal of the suit in *Brillhart* were two factors absent here. First, because the federal suit was founded on diversity, state rather than federal law would govern the outcome of the federal suit. Second, and more significantly, the federal suit was for a declaratory judgment. Under the terms of the provision empowering federal courts to entertain declaratory judgment suits, 28 U. S. C. § 2201, the assumption of jurisdiction over such suits is discretionary. That section provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration . . . ." (Emphasis added.) It was primarily because federal jurisdiction over declaratory judgment suits is

discretionary that *Brillhart* found the District Court's deference to state-court proceedings permissible. This is clear from the lower court cases approvingly cited by *Brillhart*—*American Automobile Insurance Co.* v. *Freundt,* 103 F. 2d 613 (CA7 1939); *Maryland Casualty Co.* v. *Consumers Finance Service,* 101 F. 2d 514 (CA3 1938); and *Aetna Casualty Co.* v. *Quarles,* 92 F. 2d 321 (CA4 1937)—all of which emphasized that a district court's discretion to dismiss a federal declaratory judgment suit in favor of a pending state suit is a product of the permissive nature of declaratory judgment jurisdiction.[2] Obviously neither the logic nor the holding of *Brillhart* is pertinent where, as here, federal jurisdiction is not only nondiscretionary, but *exclusive.*

The unpersuasive grope for supporting precedent in which the opinion of my Brother REHNQUIST engages is especially lamentable in light of our decision only two Terms ago in *Colorado River Water Conservation Dist.* v. *United States.* In *Colorado River* we addressed the precise issue presented here: the circumstances in which it is appropriate for a federal district court to stay a proceeding before it in deference to a parallel state-court proceeding in situations falling within none of the traditional categories for federal abstention. We explained that, in contrast to situations in which jurisdiction is concurrent in two or more federal courts,

---

[2] These decisions recognized, however, that even where a federal suit seeks only declaratory relief, a district court does not have unbridled authority to dismiss the action in deference to a concurrent state suit. For example, the court in *Maryland Casualty Co.* v. *Consumers Finance Service,* 101 F. 2d, at 515, observed:

"The granting of the remedy of a declaratory judgment is . . . discretionary with the court and it may be refused if it will not finally settle the rights of the parties or if it is being sought merely to determine issues involved in cases already pending. *Aetna Casualty & Surety Co.* v. *Quarles,* 4 Cir., 92 F. 2d 321. It may not be refused, however, merely on the ground that another remedy is available . . . or because of the pendency of another suit, if the controversy between the parties will not necessarily be determined in that suit."

where the action paralleling a federal suit is in a state court, the federal court's power to dismiss the suit before it in deference to the parallel proceeding is limited by the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." 424 U. S., at 817. Because a federal district court's power is so limited, the circumstances that justify federal-court inaction in deference to a state proceeding must be "exceptional." *Id.,* at 818. Just how "exceptional" such circumstances must be was made clear by our admonition that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Ibid.* Since we had previously noted that " '[a]bdication of the obligation to decide cases can be justified under [the abstention] doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest,' " *id.,* at 813, quoting *County of Allegheny* v. *Frank Mashuda Co.,* 360 U. S. 185, 188–189 (1959), the circumstances warranting dismissal "for reasons of wise judicial administration" must be rare indeed.

Such rare circumstances were present in *Colorado River.* There, the decisive factor in favor of staying the concurrent federal proceedings was "[t]he clear federal policy," evinced by the McCarran Amendment, of "avoid[ing the] piecemeal adjudication of water rights in a river system . . . a policy that recognizes the availability of comprehensive state systems for adjudication of water rights as the means for achieving [this] goa[l]." 424 U. S., at 819. No comparable federal policy favoring unitary state adjudication exists here. In fact, as evinced by the exclusive jurisdiction of the federal courts to determine 1934 Act claims, the relevant federal policy here is the precise opposite of that found to require deference to the concurrent state proceeding in *Colorado River.*

Ignoring wholesale the analytical framework set forth in *Colorado River,* whose vitality is not questioned, the opinion of my Brother REHNQUIST seemingly focuses on one of the four secondary factors found to support the federal dismissal in that case—the fact that the state proceedings were initiated before the federal suit—and finds that factor sufficient to insulate the District Court's actions here from mandamus review. Even putting aside the opinion's case-reading errors—its flouting of *McClellan,* its misreliance on *Brillhart,* and its misapplication of *Colorado River*—and analyzing this case on the opinion's own erroneous terms, the conclusion is still compelled that the District Court had no authority to stay Calvert's 1934 Act claims. Quite conveniently, the opinion of my Brother REHNQUIST avoids any discussion of the possible res judicata or collateral-estoppel effects the state court's determination of Calvert's 1934 Act defense would have on Calvert's 1934 Act claims for affirmative relief in federal court.[3] To be sure, the preclusive effect of a state-court determination of a claim within the exclusive jurisdiction of the federal courts is an unresolved and difficult issue. See generally Note, Res Judicata: Exclusive Federal Jurisdiction and the Effect of Prior State-Court Determinations, 53 Va. L. Rev. 1360 (1967). For myself, I confess to serious doubt that it is ever appropriate to accord res judicata effect to a state-court determination of a claim over which the federal courts have exclusive jurisdiction; for surely state-court determinations should not disable federal courts from ruling *de novo* on purely legal questions surrounding such federal claims. See *Cotler* v. *Inter-*

---

[3] Because the Court of Appeals held that "the district court should not have deferred to the state court on grounds of federalism in light of *Colorado River,*" it found it unnecessary to "reach the difficult issue of whether the conclusion of the state proceedings would have a collateral estoppel effect on the Rule 10b–5 claim for damages over which the court had retained jurisdiction but declined to resolve." 560 F. 2d 792, 797.

*County Orthopaedic Assn.*, 526 F. 2d 537 (CA3 1975); *McGough* v. *First Arlington National Bank*, 519 F. 2d 552 (CA7 1975); *Clark* v. *Watchie*, 513 F. 2d 994 (CA9 1975). As recognized by Judge Learned Hand in *Lyons* v. *Westinghouse Electric Co.*, 222 F. 2d 184, 189 (CA2 1955), "the grant to the district courts of exclusive jurisdiction over the action . . . should be taken to imply an immunity of their decisions from any prejudgment elsewhere." I recognize that it may make sense, for reasons of fairness and judicial economy, to give collateral-estoppel effect to specific findings of historical facts by a state court's adjudicating an exclusively federal claim raised as a defense, see *Granader* v. *Public Bank*, 417 F. 2d 75 (CA6 1969), but there are reasons why even such a limited preclusive effect should not be given state-court determinations. It is at least arguable that, in creating and defining a particular federal claim, Congress assumed that the claim would be litigated only in the context of federal-court procedure—a fair assumption when the claim is within exclusive federal jurisdiction. For example, Congress may have thought the liberal federal discovery procedures crucial to the proper determination of the factual disputes underlying the federal claim.

All this is not to say that I disagree with the refusal of the opinion of my Brother REHNQUIST to decide what preclusive effects the state court's determination of Calvert's Rule 10b–5 defense would have in Calvert's federal action, so much as it is to expose the opinion's error in failing even to consider the res judicata/collateral estoppel problem in evaluating the District Court's obligation to adjudicate Calvert's Rule 10b–5 claim. In my view, regardless of whether the state-court judgment would be given res judicata or collateral-estoppel effect, it was incumbent upon the District Court—at least in the absence of other overriding reasons—expeditiously to adjudicate at least Calvert's 1934 Act claims. If res judicata effect is accorded the prior state-court judgment, the exclusive jurisdic-

tion given the federal courts over 1934 Act claims would be effectively thwarted, and the policy of uniform and effective federal administration and interpretation of the 1934 Act frustrated. A stay having so undesirable a consequence could possibly be justified only by compelling circumstances absent here. On the other hand, if the state-court adjudication is not given res judicata or collateral-estoppel effect, the 1934 Act claims will have to be adjudicated in federal court in any event, and there would be no reason for staying the federal action since nothing that transpires in the state proceedings would affect the adjudication of the federal claims. Thus, regardless of the proper disposition of the res judicata/collateral estoppel question, it is clear that a district court should not stay claims over which the federal courts have exclusive jurisdiction. See *Cotler* v. *Inter-County Orthopaedic Assn., supra; Lecor, Inc.* v. *United States District Court,* 502 F. 2d 104 (CA9 1974).

II

Whether evaluated under the "clear abuse of discretion" standard set forth in *La Buy* v. *Howes Leather Co.,* 352 U. S. 249, 257 (1957), or under the prong of *Will* v. *United States,* 389 U. S. 90, 95 (1967), and *Roche* v. *Evaporated Milk Assn.,* 319 U. S. 21, 26 (1943), that permits the use of mandamus "to compel [an inferior court] to exercise its authority when it is its duty to do so," the issuance of the writ of mandamus by the Court of Appeals was proper; there is simply a complete dearth of "exceptional" circumstances countervailing the District Court's "unflagging obligation" to exercise its exclusive jurisdiction. The opinion of my Brother REHNQUIST asserts, however, that the District Court "has not purported to stay consideration of Calvert's claim for damages under the Securities Exchange Act of 1934," but rather has simply "not yet ruled upon this claim." *Ante,* at 666. While technically accurate, this characterization of the status of the proceedings below utterly ignores two important facts that shed more than

a little illumination on the true procedural posture of this case. First, at the time the Court of Appeals granted the writ, Calvert's Rule 10b–5 damages action had been before Judge Will for more than 2½ years without a ruling on the basic legal issue underlying the claim. Second, and for me dispositive, the District Court indicated that it would give the state court's determination that the disputed transaction did not involve a "security" within the meaning of the 1934 Act res judicata effect, App. to Brief for Respondent Calvert Fire Insurance Co. E–1, thereby depriving Calvert of a federal-court determination of a legal issue within the exclusive jurisdiction of the federal courts.

This Court has held that mandamus will lie to correct a district court's improper deference to pending state-court proceedings, *McClellan* v. *Carland*, 217 U. S. 268 (1910), and to preserve a proper federal-court determination of a federal issue, *Beacon Theatres, Inc.* v. *Westover*, 359 U. S. 500 (1959). Where, as here, both of these justifications are present, the propriety of the issuance of the writ cannot be questioned. I would affirm the Court of Appeals.