## ACandS, INC.

### v.

## The AETNA CASUALTY AND SURETY COMPANY and the Travelers Indemnity Company and the Travelers Insurance Company

### v.

## ARMSTRONG WORLD INDUSTRIES, INC.

### Civ. A. No. 80–1341.

United States District Court,
E. D. Pennsylvania.

July 29, 1982.

R. C. Schneider, Frank H. Griffin, III, Philadelphia, Pa., for plaintiff.

Richard K. Masterson, Norristown, Pa., for Aetna Cas. and Sur. Co.

Eugene J. Maginnis, Jr., Philadelphia, Pa., for Travelers Indem. Co.

Robert N. Sayler, Washington, D. C., and A. Earl Mays, Lancaster, Pa., for Armstrong World Industries.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Tensions spawned by increasing amounts of asbestos litigation and conflicting interpretations of insurance policies issued to plaintiff, ACandS, by defendants, The Aetna Casualty and Surety Company (Aetna) and The Travelers Indemnity Company and the Travelers Insurance Company (Travelers) underlie this action for a declaratory judgment. Specifically at issue is whether insurance policies issued by Aetna and Travelers provide plaintiff, an installer of commercial and industrial insulation, with protection based upon an "exposure", "manifestation" or "pro-rata exposure" theory. The "exposure" theory generally requires any insurer with a policy in effect at the time of a claimant's exposure to asbestos products to defend and indemnity for any resulting judgment. The "manifestation" theory, on the other hand, obligates the insurer to defend against only those claims which first manifested themselves during its term of coverage. Finally, the "pro-rata exposure" theory views asbestos injuries as occurring continuously from the first exposure until death. Under this theory an insurer's obligations are prorated in the ratio of the period of its coverage to the

entire period of injury.[1] *See, ACandS, Inc. v. Aetna Casualty and Surety Co.*, 666 F.2d 819, 821 (3d Cir. 1981) (holding that the case at bar presented a justiciable "case or controversy".)

In the case at bar, Aetna joined its insured, Armstrong World Industries, Inc. (Armstrong) as a third-party defendant, seeking a declaratory judgment as to when its obligation to defend and indemnify Armstrong arises. Aetna's third-party complaint also alleges that, prior to August 1, 1969, ACandS was a wholly-owned subsidiary of Armstrong and that Aetna issued the parent and subsidiary corporations a series of policies for specified coverage. Continuing, the third-party complaint asserts that Armstrong has since divested itself of ACandS and now both companies are individually demanding that Aetna defend and indemnify them to the full extent of the policy limits.

Armstrong argues that a pending suit in California between it and Aetna involves the same issues and, hence, warrants dismissal of the third-party action or, alternately, a stay thereof.[2]

Aetna, opposing this motion, asseverates that in the exercise of our discretion we should adjudicate the third-party complaint because the California action does not involve the same issues and parties and, hence, reliance thereon cannot support a dismissal. Moreover, Aetna asserts that the California case is not "pending" and that a judicial declaration of the apportionment of coverage limits between ACandS and Armstrong is "imperative".

For the reasons detailed below, we grant Armstrong's motion to dismiss those portions of the third-party complaint which seek a determination of the type of insurance Aetna issued, "manifestation" or "exposure", and deny the motion in all other respects.

 Undoubtedly, the pendency of the state action does not create a bar to this Court's ability to adjudicate the third-party complaint. It is equally clear that a federal court may, in its "carefully considered judgment", *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 663, 98 S.Ct. 2552, 2557, 57 L.Ed.2d 504 (1978) (quotations omitted), dismiss a declaratory judgment action which parallels a similar state action where the parties and issues are the same. This is particularly true where, as here, jurisdiction is predicated upon diversity and federal law is not strongly implicated. *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491, 492, 495, 62 S.Ct. 1173, 1174, 1175, 86 L.Ed. 1620 (1942). *See also, Provident*

---

**1.** The question of insurance coverage, and particularly whether policies provide for "manifestation" or "exposure" protection has been explored by several courts. They have generally held that such contracts are subject to a construction which triggers the insurer's obligation to defend on an "exposure" basis. The courts are not, however, unanimous as to the method of risk apportionment between and among the various insurance companies "at risk" during plaintiff's exposure. *See, Keene Corp. v. Insurance Co. of North America*, 667 F.2d 1034 (D.C. Cir.1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982), *rehearing denied*, —— U.S. ——, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982); *Porter v. American Optical Co.*, 641 F.2d 1128 (5th Cir.), *cert. denied, sub nom. Aetna Casualty & Surety Corp. v. Porter*, —— U.S. ——, 102 S.Ct. 686, 72 L.Ed.2d 650 (1981), *rehearing denied*, —— U.S. ——, 102 S.Ct. 1649, 71 L.Ed.2d 878 (1982); *Insurance Co. of North America v. Forty-Eight Insulators, Inc.*, 633 F.2d 1212 (6th Cir. 1980), *clarified*, 657 F.2d 814 (6th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981), *rehearing de-*

nied, —— U.S. ——, 102 S.Ct. 1648, 71 L.Ed.2d 878 (1982). In this district, Judge Giles subjected insurance policies to a construction consistent with the "exposure" theory. *See, Commercial Union Insurance Co. v. Pittsburgh-Corning Corp.*, No. 81–2129 slip op. at 22 (E.D.Pa. December 4, 1981). *Contra, Eagle-Picher Ind. v. Liberty Mutual Insurance Co.*, 523 F.Supp. 110 (D.Mass.1981), *appeals docketed*, Nos. 81–1761–63 (1st Cir. September 25, 1981) (adopting the "manifestation" theory).

**2.** In the California action, *Armstrong v. Aetna Casualty & Surety Co.*, No. C. 315367 (Superior Court; Los Angeles County), Armstrong brought suit against its four primary carriers, Aetna, Travelers, Liberty Mutual Insurance Company and Reliance Insurance Company and its seventeen excess carriers. The complaint asserts that each insurance company issued Armstrong a form of standard insurance and seeks a declaration that each such policy covers risks on an "exposure basis".

*Tradesmans Bank & Trust Co. v. Patterson,* 390 U.S. 102, 126, 88 S.Ct. 733, 746, 19 L.Ed.2d 936 (1968). This rule springs from notions of comity and federalism which aim to avoid "[g]ratuitous interference with the orderly and comprehensive disposition" of the state court action. *Brillhart v. Excess Insurance Co. of America,* 316 U.S. at 495, 62 S.Ct. at 1176. Moreover, a desire to promote the efficient and beneficial use of resources while avoiding vexatious litigation also supports this precept. *Leber-Krebs, Inc. v. Clinton,* 517 F.Supp. 593, 594 (S.D.N.Y.1981); *New York State Association for Retarded Children, Inc. v. Carey,* 456 F.Supp. 85, 97 (E.D.N.Y.1978).

We turn now to Aetna's first proffered reason for maintaining the third-party complaint on our docket: its assertion that the California action does not involve the *same* issues and parties as are presented here.

██ The insistence that the *same* issues and parties must be present in the state action as exist in the federal action before a court may properly decline to adjudicate a case, is misplaced. So long as there is a substantial similarity between the state and federal action, the court may freely exercise its discretion and dismiss the complaint. *Evans Transportation Co. v. Scullin Steel Co.,* 530 F.Supp. 787, 788 (N.D.Ill.1982).

The parallel state court action represents an attempt by Armstrong, the third-party defendant herein, to determine the type of coverage, "manifestation" or "exposure", which it purchased from various insurance companies. One of the named defendants is Aetna. *See* note 2, *supra.* Most of the policies issued by Aetna to Armstrong which are the subject of the third-party action are currently before the California court.[3] Moreover, as to these specific policies, the parties in the two actions are identical: Armstrong and Aetna.

Aetna also argues that the California action is not "pending" and that we may not, therefore, properly defer to it. This asser-

---

3. Compare ¶ 7 of Aetna's third-party complaint with ¶ 31 of Armstrong's Second Amended Complaint in the California case. Of the three policies sought to be litigated herein, two of them, 98 AL 1100 SR(Y) and 98 AL 2406 SR(Y), are pending in the California action.

The relationship between the third-party complaint, plaintiff's complaint and the California action raises troubling issues, some of which survive the disposition of the motion at bar.

ACandS supports its former corporate parent, Armstrong, in its attempt to extricate itself from the current litigation. Armstrong's position is that the pendency of the California action compels dismissal of the third-party complaint. As noted above, the California litigation seeks a declaration as to the type of coverage, manifestation or exposure, which the insureds were issued. Due to the former parent-subsidiary relationship between ACandS and Armstrong, Aetna issued both companies the same insurance policies. ACandS' complaint at bar seeks construction of some of the very insurance policies now the subject of Armstrong's California litigation. Compare ¶ 10 of plaintiff ACandS' complaint with ¶ 31 of Armstrong's Second Amended Complaint in California. For example, both complaints request construction of the same Aetna policies: 98 AL 1100 SR(Y) and 98 AL 115000 SR(Y). For like reasons, additional duplicative litigation is possible with respect to policies issued by co-defendant Travelers to its insureds, Armstrong/ACandS. Compare ¶ 10 of plaintiff ACandS' complaint with ¶ 24 of Armstrong's Second Amended Complaint in California. Both complaints request construction of same Travelers' policies: RSL 7226998 and RSL 7226999. True, additional insurance policies, not the subject of California litigation, are currently at bar. However, this may not vitiate the harm which can result from potential conflicting constructions of the insurance policies if Armstrong is correct that each policy was written on a "standard form". *See* ¶ 3 of Armstrong's Second Amended Complaint in California.

The paradox is that ACandS supports Armstrong's motion, albeit on narrow grounds, which seeks to dismiss the third-party complaint due to a pending state action. The same argument could, conceivably, be made as to the propriety of any attempt by this Court to adjudicate the policies currently at bar in California and raised in ACandS' complaint. Given the posture of and the relationship between the two cases, the danger of duplicative litigation, inconsistent results and inefficient use of judicial resources, are all subjects of legitimate concern.

Since this issue has not been raised by the parties we will not attempt to resolve or even directly address it. We simply note our concern and express confidence that counsel will appropriately aid the Court in guarding against these dangers when, and if, they surface.

tion is predicated upon the affidavit of John L. Endicott, Armstrong's West Coast counsel. He avers that in the latter part of 1980 a petition was filed in California which asserted that a number of pending state court actions, including Armstrong's, involved common questions of law and fact and requested that the actions be coordinated. The petition for coordination was granted and, *pursuant to California law*, all further proceedings were stayed except as directed by the Coordination Trial Judge. *See* California Rule of Court No. 1529. The stay has generally remained in effect due to efforts by some parties to disqualify the Coordinated Trial Judge. According to the Endicott affidavit, the issue of disqualification may have to ultimately be resolved by the California Supreme Court and "no one can say how long" it will take to finally appoint a Coordinated Trial Judge.[4]

Countering, Armstrong asserts that prior to the stay and coordination of the California proceeding, extensive discovery was undertaken in two of the cases and that once the stay is removed the cases will be pursued expeditiously. In fact, Armstrong has represented that summary disposition will likely be sought when the stay is dissolved.

 We do not believe that the resolution of conflicting prognostications of when the California stay will be lifted is particularly relevant to the Court's inquiry. One of the foundations upon which the *Brillhart* rule rests is, as noted above, the desire to avoid "[g]ratuitous interference with the orderly and comprehensive disposition" of the state court action. *Brillhart v. Excess Insurance Co. of America*, 316 U.S. at 495, 62 S.Ct. at 1176. As the Endicott affidavit establishes, the coordinated California cases are, in fact, proceeding in accordance with California law in an "orderly and comprehensive" manner. A refusal on our part to

appropriately recognize that California provides for a stay, pending final coordination and selection of an impartial trial judge, would amount to a "gratuitous interference" with state court procedures. Simply stated, the mere fact that state court rules mandate a temporary stay does not permit us, consistent with the notions of federalism, to simply ignore them.[5]

Because it is currently the subject of California state court litigation, we appropriately dismiss those portions of the third-party complaint which seek a declaration of the type of policies which Aetna issued ACandS and Armstrong; i.e., whether Aetna's obligations thereunder are triggered by the "manifestation", "exposure" or some other theory.

The third-party complaint raises issues, however, which will not be addressed by the California court. Specifically, Aetna alleges [6] that it issued insurance policies to Armstrong and Armstrong's former subsidiary, ACandS, from January 1, 1963 until April 1, 1969. Each insured, ACandS and Armstrong now contend that they are entitled to the full amount of the protection purchased by the "joint years policies". Aetna here seeks a determination which the California court has not been asked to make: a declaration of the rights and obligations between and among Aetna, Armstrong and ACandS with respect to the joint years' policies. Since this issue is not pending before the California state court, we will properly adjudicate it.

An appropriate order will issue.

---

**4.** *See* Endicott affidavit, ¶ 7.

**5.** Where the federal court is convinced that there is a "strong possibility" that the parallel state action "will never proceed to trial" deferral thereto is, of course, inappropriate. *Delvaux v. Ford Motor Co.*, 518 F.Supp. 1249, 1252 (E.D.Wis.1981). Moreover, where the state action is dismissed, deferral thereto is likewise

erroneous. However, the state action has only been stayed and it is quite clear that a stay is not the equivalent of a dismissal. *Will v. Calvert Fire Insurance Co.*, 437 U.S. at 665, 98 S.Ct. at 2558 (1978).

**6.** *See* paragraphs 8, 10, 11 and 12.