Willie L. CLARK, Jr., Plaintiff,

v.

INTERNATIONAL UNION, UNITED
MINE WORKERS OF AMERICA,
et al., Defendants.

Civ. A. No. 89–0144–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

Sept. 18, 1989.

George Carson, II, Winston–Salem, N.C., for plaintiff.

William O. Shults, Washington, D.C., and Michael Passino, Nashville, Tenn., and James J. Vergara, Jr., Hopewell, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

GLEN M. WILLIAMS, Senior District Judge.

The National Labor Relations Board ("NLRB"), by its regional director, has petitioned this court to enjoin the International Union and District 28 of the United Mine Workers ("UMWA") from picketing the Covenant Coal Corporation ("Covenant") in violation of the National Labor Relations Act, 28 U.S.C. § 151 et seq. (the "Act"). On May 22, 1989, Covenant filed a charge of unfair labor practices against the UMWA. Upon investigating the charge, the NLRB issued a formal complaint against the UMWA. The complaint alleges that the UMWA has committed unfair labor practices under section 8(b)(1)(A) of the Act. Pursuant to section 10(j) of the Act, the NLRB has brought its present petition, which seeks to proscribe unlawful picketing of Covenant during the pendency of the NLRB's review of the complaint against the UMWA.

Covenant and other companies instituted a state court action against the UMWA on May 9, 1989. In this suit, Covenant sought a temporary injunction of the UMWA's picketing in violation of the laws of Virginia. On June 23, 1989, the Circuit Court of Tazewell County, Virginia, by Judge Nicholas E. Persin, entered an order imposing specific restraints on picketing by the UMWA of Covenant. This injunction, by its terms, will remain in effect until October 10, 1989, or such other time as the court may decree.

In view of the nature and effect of the state court proceeding, this court now declines to exercise its jurisdiction with regard to the NLRB's petition. Instead, the court will abstain, in accordance with the principles set forth in Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and retain the matter on the docket for disposition at some future date.

## FINDINGS OF FACT

Covenant is a Virginia corporation which operates a coal processing plant near Cedar Bluff, Virginia. In the operation of its business, Covenant annually receives goods and raw materials of value in excess of $50,000 directly from points outside Virginia. On or about May 8, 1989, members of the UMWA began picketing the Covenant plant.

The evidence now before this court regarding the picketing of Covenant consists entirely of testimony, pleadings, and court records from the state court action between Covenant and the UMWA. The state court action began with the filing of a bill of complaint by Covenant and other coal companies against the UMWA on May 9, 1989. Judge Persin issued a temporary restraining order on May 10, which he extended on June 8. On June 13, Judge Persin found the International Union, the District and several individuals in contempt and assessed fines in an order made *nunc pro tunc* to May 26. On June 23, Judge Persin ordered additional fines against the UMWA. Also on June 23, Judge Persin decreed an amended injunction, which remains in effect until October 10 or as otherwise ordered by the court.

The UMWA concedes that unlawful picketing occurred during the May 8–June 23 period. During this period, union members blocked and impeded the ingress and egress of employees and others to and from Covenant facilities. The picketers threatened employees, placed "jackrocks" and other hazards on roadways, and threw objects at vehicles. The threats and attempts to injure the persons and property of non-striking employees were made because such employees refused to engage in the strike against Covenant.

The only factual dispute in this case is whether the illegal acts have continued after June 23 or are likely to resume. In its amended complaint of August 3, the NLRB alleged that UMWA members put nails on the road at Covenant June 23 and placed jackrocks on a road near Covenant on June 27. The amended complaint also alleges that attempts to injure employees occurred at different sites on June 23 and 27. No other illegal acts are alleged to have occurred since the state court entered the amended injunction.

This court is unpersuaded by the NLRB's efforts to establish the inadequacy of the state court injunction. The state court injunction, by its terms, is more restrictive than the injunctive which the NLRB now advocates. The state court order limits the number of picketers and the number of times they may be changed per day, limits the area in which picketing may be conducted, and limits the hours during which picketing may be conducted. By contrast, the NLRB's proposal contains no such specific provisions.

The NLRB's proposed injunction does recite a list of unlawful activities to be enjoined. In each particular, the state court order specifically reaches the same activity. Both injunctions forbid blocking roads, placing hazards on roads, throwing things at vehicles, and other acts of violence and destruction. The state court order, unlike the NLRB proposal, specifically prohibits the use of threats and fighting words in dealing with non-striking employees.

Most importantly, the state court order required a more thorough scheme for notifying the strikers of its provisions and verifying the facts of notice and compliance. The state order contemplated distribution of copies of the order simultaneous with distribution of strike benefit checks. The order also requested the picketers to maintain a log listing who was picketing when. These procedures are not required by the NLRB's proposal. In addition, the transcript of the June 20 state court hearing indicates that all of the strikers were to receive copies of the amended injunction by mail. Defense Exhibit 2 at 5–7.

This court held its hearing on the NLRB's petition on August 22, 1989. At that time, no evidence could be shown of violations of the state court order of June 23, two months prior. Significantly, as the certified copy of the state court's docket sheet confirms, Covenant has not asserted the UMWA's noncompliance in the state court proceeding since the issuance of the June 23 orders. *See* Defense Exhibit 1. The lapse of two months without verifiable incident leads this court to conclude that the UMWA has learned to abide by the terms of the state court injunction. This court concludes further, as stated above, that the state court injunction duplicates or surpasses the requirements of the injunction which the NLRB now proposes.

## CONCLUSIONS OF LAW

The court finds that it has jurisdiction to issue an injunction under section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j). The charging party, Covenant, and the respondents are found respectively to be an "employer engaged in commerce" and "labor organizations" as the Act defines those terms in sections 2 and 8. The UMWA, by its own evidence and admission, has engaged in unfair labor practices within the meaning of section 8(b)(1)(A) of the Act. The NLRB has issued a complaint under section 10(b) of the Act against the UMWA regarding these practices.

This court concludes that it will not exercise its jurisdiction in this case. The current injunction of the state court is found to have caused the UMWA to cease the activities which gave rise to the NLRB's complaint. In addition, this court is of the opinion that the state court order has and will prevent the recurrence of such activities. Consequently, as the NLRB's proposed injunction duplicates a state court order which has proven effective, this court concludes that any decision regarding the NLRB's petition would be improper at this time.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). In *Colorado River,* the Court concluded that dismissal of a federal court action brought by the United States was appropriate in view of a concurrent state court proceeding. The Court observed, in the context of concurrent state-federal proceedings, that federal courts were under a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Id.* at 817, 96 S.Ct. at 1246. "[T]he circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration ... do nevertheless exist." *Id.* at 818, 96 S.Ct. at 1246.

The concurrent proceeding in *Colorado River* involved state water rights. "In assessing the appropriateness of dismissal in

the event of an exercise of concurrent jurisdiction, a federal court may ... consider such factors as the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums." *Id.* (citations omitted). In the context of water rights and the McCarran Amendment, 43 U.S.C. § 666, the Court concluded that the policy against piecemeal litigation was particularly compelling. 424 U.S. at 819, 96 S.Ct. at 1247. The Court noted further, in concluding that dismissal of the federal court action was proper, that the state court proceeding had reached a far more advanced stage. 424 U.S. at 820, 96 S.Ct. at 1248.

The Supreme Court reconsidered the *Colorado River* doctrine in *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978) and *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "The Court in *Cone* noted two additional factors to consider in applying the exceptional circumstances test: (a) whether the source of law is federal or state, and (b) the adequacy of the state court proceedings to protect the federal plaintiff's rights." *Kruse v. Snowshoe Co.,* 715 F.2d 120, 123 (4th Cir.1983) (citing *Cone,* 460 U.S. at 23–27, 103 S.Ct. at 941–943).

Application of these factors to the NLRB's petition requires consideration of the policy behind section 10(j). "Congress enacted section 10(j) to ensure that [parties] facing unfair labor practice charges will maintain the status quo which the Board conducts the so often lengthy administrative proceedings." *D'Amico v. A.G. Boone Co.,* 647 F.Supp. 1546, 1548 (W.D. Va.1986) (Turk, J.). "Because of the sometimes slow procedure before the Board, Congress gave the Board the power, in the public interest ... to prevent persons who are violating the Act from accomplishing their unlawful purpose because of delays before the board." *Johnston v. J.P. Stevens & Co.,* 341 F.2d 891 (4th Cir.1965). "The circumstances of the case must demonstrate that there exists a probability that

the purposes of the Act will be frustrated unless temporary relief is granted. Administration of the Act is vested by Congress in the Board, and when the circumstances of a case create a reasonable apprehension that the efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless, temporary relief may be granted under section 10(j)." *National Labor Relations Board v. Aerovox Corp.*, 389 F.2d 475, 477 (4th Cir.1967) (quoting *Angle v. Sacks*, 382 F.2d 655 (10th Cir.1967)). This court observes that 10(j) relief is proper not to remedy unfair labor practices but merely to preserve conditions in a particular case so that any remedy the NLRB might choose will have a chance to be effective.

Two of the *Colorado River* factors are difficult to apply meaningfully to the present facts. In this case, the state court has not assumed jurisdiction over any particular property. This case is about picketing, not property, so the only object of the state court's orders would be the conduct of the strikers. In addition, the question of which court is more convenient seems unhelpful. Neither court is especially more convenient than the other, although the state court is presumably closer to the site of the actual picketing. This court does not believe that these factors weigh very heavily in this case. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. at 1247.

The policy of avoiding piecemeal litigation strongly supports abstention in this case. Here, no reason has been shown to doubt the capacity of the state authorities to enforce the state court order. Consequently, the effect of issuing a duplicative federal injunction would be to increase the Union's burden of compliance without any additional benefit to Covenant or the public at large. Also, duplicative injunctions allow for duplicative contempt hearings and the possibility of conflicting findings as to the lawfulness of UMWA conduct.

Significantly, neither the state nor federal injunction proceedings affect the ongoing NLRB review of the unfair labor practice charges. Instead, both the state and federal court actions concern restraint of violence and preservation of the status quo. This court believes that UMWA compliance and respect for the judicial process in general may be better maintained by avoiding the issuance of any more injunctions than are necessary to prevent the unlawful conduct of the picketers.

The ability of the state authorities to enforce their laws distinguishes this case from this court's recent decision in *Clark v. United Mine Workers*, 714 F.Supp. 791 (W.D.Va.1989). In that case, this court issued a 10(j) injunction despite the prior issuance of a state court injunction. This court concluded from the massive civil disobedience evident in the case that the state court action had "utterly failed" to preserve the status quo. *Id.* at 793. The court observed, however, that it "probably would exercise its discretion and refuse to hear this case if there were an indication that there was an effective state court action making an injunction by this court unnecessary." *Id.* In the present case, the state court action appears to be effective.

The state court action has reached a far more advanced stage than the federal proceeding. All of the evidence now before this court was generated by the state court proceedings more than two months ago. The UMWA has had two months to work with the state court order, to learn its provisions and abide by them. Issuance of a similar but not identical federal injunction will require the union to re-evaluate its conduct of the picketing, to avoid violation of either injunction. Yet the similarity between the state court order and the NLRB's proposed injunctions would lead to the result that issuance of a federal injunction would give the UMWA more papers to serve and post without varying the actual limitations on picketing.

The source-of-law factor supports abstention. In another context, this court held

"that a suit seeking injunctive relief under state law based on allegations of violence does not arise under the laws of the United States" and "where a complaint alleges acts of violence, federal labor law does not preclude the states from enjoining such conduct." *Norton Coal Co. v. United Mine Workers, District 28*, 387 F.Supp. 50, 52 (W.D.Va.1974) (Turk, J.). "The existence of the [Labor Act] ... does not preclude the states from the exercise of their usual police power. The states remain free to protect the public peace and order." *United Steelworkers v. Dalton*, 544 F.Supp. 282, 287 (E.D.Va.1982). The courts in *Dalton* and *Norton Coal* rejected arguments that federal labor law preempted Virginia's right-to-work statute, § 40.1–53. Consequently, on the one hand, the state court order in this case seeks to implement the laws of the Commonwealth of Virginia to protect its citizens. These laws as applied here do not conflict with federal labor law. The NLRB, on the other hand, seeks only to preserve the status quo so that an effective remedy may ultimately be had for the unfair labor practice charges. Calculation of the status quo includes the effect of state law enforcement. *See Squillacote v. UAW*, 384 F.Supp. 1171, 1175 (E.D.Wis.1974) ("The Board has not demonstrated to this court that other forums and law enforcement agencies available to stop the alleged acts of destruction and strike misconduct are unable to do so in case"); *Clark*, 714 F.Supp. at 793.

Finally, this court determines that the state court proceedings are adequate to protect the federal plaintiff's rights. The NLRB seeks an injunction which will preserve the status quo. The state court has issued an injunction which encompasses all of the specific provisions of the NLRB's proposed injunction and adds others. The UMWA has evidently complied with the state court injunction. Consequently, this court concludes that the state court proceedings have fully accomplished the NLRB's objectives in this case and the objectives of Congress in enacting section 10(j) as they apply to this case. By staying the present petition, the court allows the NLRB to return before it in the future, if

necessary, with any evidence it may obtain as to the inadequacy of the state court order in preserving peace at Covenant. *See Cox v. Planning Dist. 1 Community Mental Health and Mental Retardation Services Bd.*, 669 F.2d 940, 943 (4th Cir. 1982) (stay rather than dismissal is appropriate disposition of duplicative federal proceeding).

For the reasons stated above, the petition is stayed, and will be retained on the docket for future disposition. Likewise, the respondent's motion to dismiss is neither granted nor denied.