**AETNA STATE BANK, Plaintiff-Appellant,**

v.

**Alan Milton ALTHEIMER, Administrator with the will annexed of the Estate of Milton L. Altheimer, Deceased, Defendant-Appellee.**

No. 17978.

United States Court of Appeals, Seventh Circuit.

July 20, 1970.

Charles J. O'Laughlin, Chicago, Ill., Joan M. Hall, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Edgar Bernhard, Merrill A. Freed, Chicago, Ill., for defendant-appellee, D'Ancona, Pflaum, Wyatt & Riskind, Chicago, Ill., of counsel.

Before SWYGERT, Chief Judge, PELL, Circuit Judge and DOYLE, District Judge.[1]

PELL, Circuit Judge.

The plaintiff-appellant, Aetna State Bank, filed this action in the district court, alleging violation of Rule 10b–5 of the Securities and Exchange Commission on the part of the defendant-appellee's decedent, Milton L. Altheimer. This is an appeal from an order entered

by the court below on July 31, 1969 granting the motion of the defendant Administrator for abatement and dismissal of the action.

While we are expressly refraining in this opinion from passing on all of the issues presented on the appeal, we have found it necessary in arriving at that decision to review the factual background of all of the issues so presented.

On September 2, 1966, the Bank renewed a loan which had previously been made to Milton L. Altheimer, in the amount of $233,200. Altheimer executed a promissory note and, as security for the repayment of the indebtedness, he pledged 93,000 shares of capital stock of Tel-A-Sign, Inc.

Altheimer died on March 14, 1968. In May and early June 1968, the Bank advised the Administrator that the Tel-A-Sign shares would be sold by the Bank at private sale at a fraction of the then market value of the shares. The Administrator twice in writing objected to the proposed sale contending that it would not be commercially reasonable and therefore, would be in violation of the Illinois Uniform Commercial Code. The Bank was advised that it would be held accountable for the difference between the value of the shares and the price at which the Bank might sell them and for any other damages which might be sustained by the Administrator. Nevertheless, the Bank proceeded with the sale and the stock was sold on June 14, 1968 as a result of which the Bank claimed a deficiency of $93,700 after applying the proceeds of the sale to the balance of the loan.

On July 18, 1968, the Bank filed a claim against the Administrator in the Circuit Court of Cook County, Illinois, the claim being for the alleged deficiency of $93,700. The claim made no reference to Rule 10b–5 of the Securities and Exchange Commission, promulgated under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).

---

1. Judge Doyle of the United States District Court for the Western District of Wisconsin is sitting by designation.

On July 30, 1968, the Administrator filed an answer and counterclaim in the state action asserting that the Bank had sold the collateral shares at a grossly inadequate price, that the sale was not commercially reasonable under the Uniform Commercial Code of Illinois and that the shares were purchased from the Bank by persons who had access to inside information concerning Tel-A-Sign and were then known to the Bank to be persons with such access. The complaint sought exemplary damages of $100,000 in addition to compensatory damages.

On November 5, 1968 the Bank filed the present action in the United States District Court. The complaint alleges that in the negotiations for the loan by Altheimer, the decedent, he failed to reveal that the stock being pledged had been issued to him without registration under the Federal Securities laws and upon his representation that he was acquiring the stock for investment purposes only. It was claimed also that he had failed to disclose the limitations upon the marketability of the pledged stock and that the foregoing facts were a material omission which operated as a fraud and deceit upon the Bank in violation of Rule 10b–5.

Some nine days later, on November 14, 1968, the Bank filed its answer to the counterclaim of the Administrator pending in the state court. In its answer to the counterclaim, the Bank relied on Rule 10b–5 as an affirmative defense.

Thereafter, the Administrator filed a motion in the federal court action seeking an order abating the proceedings and dismissing the cause. The motion, after referring to the state court litigation, asserted in support of the motion for abatement that both the prior action and the federal action arose out of a single transaction, towit, the single loan to the decedent, Milton L. Altheimer. It was the further alleged that the issues raised in the federal cause had been raised in the prior action, that the rights of the parties could be fully determined and adjudged in the prior action and that the federal cause therefore constituted repetitive litigation and should be abated.

The dual-relief motion further alleged that the complaint failed to state a claim upon which relief could be granted because (a) a pledge of securities in connection with a bona fide loan is not a purchase or sale of a security within the meaning of Rule 10b–5, (b) the complaint did not allege that the pledge of Tel-A-Sign, Inc. stock was other than bona fide and (c) the complaint was based on legal conclusions and failed to allege any facts which the decedent, Milton L. Altheimer, purportedly failed to reveal to plaintiff.

Actually, on appeal in support of the motion to dismiss, the Administrator urged the first ground hereinbefore set forth of the motion to dismiss but also urged that the complaint failed to allege facts to support the conclusion that the Bank was limited in selling the pledged securities by any provision of the Federal Securities law and that the complaint failed to comply with the particularity requirement of Rule 9(b), Federal Rules of Civil Procedure.

In view of our ultimate decision in this cause, it is unnecessary to decide whether there is any variance between the grounds asserted in support of the motion to dismiss on appeal and those asserted in the court below, or whether, if there be such variance, it is significant.

The district court ordered "that defendant's motion for abatement and dismissal be and it is hereby granted." No opinion was given by the district court and the record is silent as to the reasons on which he based his order sustaining both the abatement phase and the dismissal aspect of the motion. The only reference to a finding is "that the contentions of defendant should be sustained." It would have been most helpful to this court on appeal if the court below had indicated the basis for its doubled-faceted ruling. As it is, we have in the sustaining of the motion for

abatement an indication that the court thought the rights of the parties could be fully determined and adjudged in the state court action. On the other hand, we have an indication in the ruling on the motion to dismiss, that the court was of the opinion that the Bank had failed to state a claim upon which relief could be granted. It is true that the Administrator also in support of his motion to dismiss asserted that the complaint failed to comply with the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. Our examination of the complaint indicates that it was sufficiently and adequately specific to meet the requirements of Rule 9(b).

Assuming *arguendo* that the court based its ruling on the motion to dismiss upon a failure to state a claim upon which relief could be granted, the district court's ruling on the two consolidated motions would seem to be contradictory. On the one hand, the court has told the Bank that its action is not being entertained in the federal courts because the issue asserted with regard to Rule 10b–5 of the Securities and Exchange Commission can be fully litigated in the state court but in the next breath the court is telling the Bank that it will not be able to litigate fully the issue under Rule 10b–5 in the state court because the federal court has found that the allegations of the complaint regarding Rule 10b–5 do not state a claim upon which relief can be granted.

It is our opinion, and we so hold, if the motion for abatement was one which the court found he should sustain, that upon so doing he should have taken no further action on the motion to dismiss but should merely have stayed the proceedings before him until a final determination in the state court action. Because of our holding in this respect, it is therefore necessary to turn first to the matter of the ruling on the motion for abatement.

Although our attention was not directed to it, either during the briefing or argument on this appeal, we are confronted at the outset of our consideration of the ruling on the motion for abatement by a federal statute which would purportedly deny us the power of review of the ruling.

"There shall be no reversal in the Supreme Court or a court of appeals for error in ruling upon matters in abatement which do not involve jurisdiction." 28 U.S.C. § 2105.

The language of this section of the statute is clear and explicit, would seem to leave little room for construction and would therefore seem to be dispositive of the issue before us. Nevertheless, we recognize that the statute having not been heretofore urged in this appeal, the Bank did not advance an argument against the application thereof. In view of the position of the Bank on this appeal, we feel that *inter alia* the Bank would contend that there is a conflict between two federal statutes. One prohibits our reviewing on appeal and reversing upon a matter of abatement, while the other states that the district courts of the United States should have exclusive jurisdiction of violations of the Securities Exchange Act and rules and regulations thereunder. 15 U.S.C. § 78aa.

Further, the proviso in 28 U.S.C. § 2105 is to be noted to the effect that the prohibition of reversal upon matters of abatement is only as to those matters which do not involve jurisdiction. As will be developed subsequently in this opinion, what the district court was in effect doing was determining as a discretionary matter that he was abstaining from the exercise of jurisdiction. There is no question, of course, that under the Securities Exchange Act there was jurisdiction in the court. The jurisdiction was merely not exercised. While it therefore could be argued that for this reason also the statute is not applicable to the particular appeal before us, because of the result we are reaching in this case it is not necessary to decide the question.

"Abatement" as used in the statute in question has been defined by this court

as being the overthrow of an action which defeats the action for the present, but does not debar the plaintiff from commencing it in a better way. Bowles v. Wilke, 175 F.2d 35, 37 (7th Cir.1949). It seems somewhat questionable in view of the totality of the court's ruling below in the case before us whether it was not contemplated that the plaintiff was debarred from commencing the action "in a better way" in the federal court.

Because of these factors and for possible guidance to the district courts in similar matters, we, at the risk of indulging in *obiter dicta*, deem it worthwhile to review the action of the court below on the matter of the ruling on the motion for abatement.

■ The Bank strenuously contends that abatement of the action was impermissible because Congress has granted to the federal courts exclusive jurisdiction over violations of the Securities Exchange Act. We concede the correctness of this position in so far as the *initiation* of an action founded on the federal statute in question. However, the matter can be litigated in the state court action involving these parties. The original brief filed by the Bank quotes Professor Loss to the effect that even if it be assumed that the act precludes a state court from entertaining an action in so far as relief is sought, "nothing in that section prevents the state court from considering questions * * * which are introduced by way of defense, and failure to do so would violate the supremacy clause." II Loss, Securities Regulation 977 (1961).

Professor Loss points out that the Supreme Court of Delaware had reached the opposite position. However, the author feels on the basis of a number of analogous situations that there is no question that the refusal of the state court to entertain a defense of federal illegality is a graver error than its refusing to accept jurisdiction which is given it over federal claims.

In any event, it would appear that the Administrator would be estopped to raise any question in the state court proceedings to the effect that the state court could not deal with the federal issue. In his reply brief below in support of his motion, he states the following:

"* * * the Circuit Court of Cook County has ample jurisdiction to deal with all of the issues, including the federal issue raised by plaintiff in that action."

This position has been consistently taken throughout by the Administrator.

■ Generally speaking, both at common law and under the codes and practice acts, motions in abatement, although permitted, have been regarded with disfavor. This hostility rests upon the basis of their nonmeritorious character, raising as they do, issues turning upon formal and procedural matters, to the exclusion of the very right and truth of the cause of action and delaying the trial of the case upon its merits. 1 C.J. S. Abatement and Revival, § 4 p. 31 (1936). Also, matters in abatement must be presented at the earliest reasonable opportunity and will be regarded as waived if not so promptly urged. 1 C. J.S. Abatement and Revival § 193 p. 248 (1936). The Federal Rules of Civil Procedure do not seem to recognize the motion in abatement, at least in terms. It is indicated, however, that the defense of pendency of another action in multiplicity of suits should be raised by answer and not by motion to dismiss although if a stay is sought on the ground of the pendency of another action, the matter may be presented to the court by motion independently of rule 12(b). See 2A Moore. Federal Practice, ¶12.07[2], p. 2263 (2d Ed.1968).

■ In any event, what would seem to be an outgrowth of the old common law plea in abatement has in recent years received increasing recognition in treatises, law review articles and in federal court decisions. This is sometimes referred to as the doctrine of absten-

tion.[2] One of the law review articles dealing with the subject is that of Professor Vestal entitled Repetitive Litigation, 45 Iowa Law Review 525 (1960). The author points out that it is well established that where two actions involving the same cause of action are pending in a state and federal court, and are within the concurrent jurisdiction of each, both actions, in so far as they seek relief *in personam*, may proceed at the same time (*ibid* at p. 532). Indeed, it is suggested by the author that many courts deal with the problem in the classic manner and do permit both actions to proceed at the same time.

On the other hand the text develops (and this would appear to be becoming increasingly appropriate as the work load of the court increases) that discretion should be exercised by the courts in abstaining from exercising jurisdiction in appropriate cases notwithstanding that, in the language of the Supreme Court, abstention is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it (*ibid* at p. 539).

Professor Vestal states the following at page 540:

"This suggests that the courts have discretion in the manner in which they will handle the problem of judicial administration. They need not use a mechanical test such as priority of actions as used in abatement under the traditional view. There is a certain degree of discretion regarding how cases will be handled in the inter-

est of justice. This power of the courts includes the power to stay or hold or to dismiss. Courts in using this power will consider the interests of the litigants, the courts, and the witnesses. The application of this power involves a number of factors to be considered and the courts have not yet formulated a clear and consistent policy."

▆▆ The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. Landis v. North American Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). A stay pending the outcome of the litigation in another court between the same parties, involving the same or controlling issues is an acceptable means of avoiding unnecessary duplication of judicial machinery. ACF Industries, Inc. v. Guinn, 384 F.2d 15, 19 (5th Cir.1967).

The growth of the abstention doctrine is recognized in 1 Barron & Holtzoff-Wright, Federal Practice & Procedure § 64, 352 (1960). The doctrine is referred to by the authors as a sound development in the administration of the federal courts.

▆▆ The granting or denial of a stay has been held to be within the discretion of the trial court in analogous

2. 1 Barron & Holtzoff-Wright, Federal Practice and Procedure, § 64, 339 (1960), lists a number of law review articles pertaining to the subject:

"See generally Young, Discretion to Deny Federal Relief against State Action, 1950, 28 Tex.L.Rev. 410.

Comment, The Decline of Federal Concurrent Equity Jurisdiction, 1952, 40 Calif.L.Rev. 300.

Comment, Contraction of Federal Jurisdiction: Convenience or Necessity? 1952, 19 U.Chi.L.Rev. 361.

Note, Power to Decline the Exercise of Federal Jurisdiction, 1952, 37 Min.L. Rev. 46.

Note, Power to Stay Federal Proceedings Pending Termination of Concurrent State Litigation, 1950, 59 Yale L.J. 978.

Federal Judicial Power: The Doctrine of Equitable Abstention, 1957, 2 Race Rel.L.Rep. 1222.

For an unusually good discussion in the light of the latest Supreme Court decisions, see Note, Abstention: An Exercise in Federalism, 1959, 108 U.Pa.L. Rev. 226."

situations. Ferguson v. Tabah, 288 F.2d 665, 672 (2d Cir.1961). The cases differentiate *in rem* and *in personam* actions in applying the principles here involved. More clearly, of course, the result of abstention was reached in the *in rem* cases where a state court already had custody of a *res*. A federal court must decline jurisdiction, in accord with the settled rule that the court first taking jurisdiction of a *res* may proceed to final judgment. 1 Barron & Holtzoff-Wright, Federal Practice & Procedure § 64, 351 (1960). While it seems to be well established that a federal court is not required to abate the normal *in personam* action on a plea of a pending action in a state court, nevertheless it is within the discretionary power of the district court to stay its proceedings pending the completion of state proceedings. See Ballantine Books, Inc. v. Capital Distributing Co., 302 F.2d 17, 19 (2d Cir.1962). See also, Seaboard Finance Co. v. Davis, 276 F.Supp. 507, 511 (N.D.Ill.1967).

The Bank takes the position that many of the cases supporting the discretionary power of the district court to abate (or abstain) in a situation such as that before us involved either preliminary injunction matters or declaratory judgment actions. It is true that many of the cases do involve one or the other of these situations and that the granting or denying of a preliminary injunction and the entertaining of a declaratory judgment action are subjects calling into play the discretionary power of the court. Nevertheless we find a pattern of discretionary power running through all of the cases involving abstention from the exercise of jurisdiction.

See, for example, the decision of this court in American Automobile Ins. Co. v. Freundt, 103 F.2d 613 (7th Cir.1939), in which this court stated (at p. 617) "under the decisions of the United States Supreme Court the existence of jurisdiction over the subject matter of a class of cases does not impose upon a court an absolute duty to exercise its jurisdiction whenever invoked in a case of the class" and "* * * the decisions of state and lower federal courts almost uniformly hold that there is a measure of discretion."

We need cite no cases nor set forth any statistics on the obvious fact of the ever increasing work load on our courts, both state and federal. It is a salutary doctrine in our opinion which permits, when the same issues and same parties are involved in two courts, even though those courts have concurrent jurisdiction, one court to have the discretion to direct by an appropriate stay order that the litigation be confined to one forum.

It has been stated by one text that in the cases in which a federal court declines to act to avoid interference with state activity, dismissal of the action rather than retention of jurisdiction pending a state determination is normally appropriate. The text states, "If the state court to which deference is thus shown prejudices any federal rights of the parties, this can be redressed by review of the state decision in the United States Supreme Court." 1 Barron & Holtzoff-Wright, Federal Practice & Procedure § 64, 346 (1960).

In the matter before us we do not believe, in fairness to the parties, that the action should be dismissed in the court below but rather it should be stayed pending the final outcome of the state litigation. While ultimate relief on the federal issue by appeal to the United States Supreme Court is theoretically available, it is our opinion that by permitting the federal action to pend, even though in a dormant status, the liklihood is greater that the litigation will reach final disposition at the trial level than if the federal action were to be dismissed at this time. Conceivably state action could be quite unreasonably delayed or other factual situations not now anticipated might develop in the state litigation which would cause the district court on appropriate petition to desire to reactivate and to go forward with the pending but presently stayed action.

On the basis that the district court had discretionary power to grant the motion for abatement, it is only necessary that we determine whether the court's discretionary power was abused. As a general rule, an appellate court will not review the action or ruling of the trial court with reference to matters resting in the latter's judicial discretion, unless such discretion has been clearly and prejudicially abused. 5A C.J.S. Appeal and Error § 1583, p. 24 (1958).

The view expressed in the general text here cited has been followed by this court. Thus, in the recent case of Particle Data Laboratories, Inc. v. Coulter Electronics, Inc., 420 F.2d 1174 (7th Cir.1969), the court stated the following at p. 1178:

"Thus, the only question for this court is whether the district court abused its discretion in refusing to exercise the jurisdiction which we may assume *arguendo* it had. 'Generally, an appellate court may set aside a trial court's exercise of discretion only if the exercise of such discretion could be said to be arbitrary.' Sears, Roebuck and Co. v. American Mutual Liability Insurance Co., 7 Cir., 372 F.2d 435, 438 (1967). '[D]iscretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.' Delno v. Market St. Ry. Co., 9 Cir., 124 F.2d 965, 967 (1942)."

In the light of this general principle, we now turn to the posture of the litigation in the two courts. In the federal action the only issue presently involved is the right of the Bank to recover, for an alleged violation of Rule 10b–5, damages which will be the equivalent of the unpaid balance owing on the note of the decedent to the Bank. No other issues were involved at the time of the ruling of the court below. On the other hand, in the state court, there is not only the issue of the alleged violation of Rule 10b–5 but also the right of the Bank to recover damages, and it is not contended other than that these damages will be the same as the Bank could recover in the federal action. In addition, there is involved in the state court action, the defenses that the Administrator has asserted to the claim filed by the Bank, this being principally based on the Illinois Uniform Commercial Code. Again, it is recognized that the Rule 10b–5 issue in the state court is not directly the basis for affirmative relief but is indirectly so as the validity or invalidity of the Rule 10b–5 claim would seem to be determinative of the ultimate right of the Bank to recover. All of the issues, or points of controversy, between the parties are presently before the court in the state proceeding. This is not true in the federal action. Therefore, while we might or might not have reached the same result as did the district court in passing upon the issue, we do find and hold that there was no abuse of discretion.

With reference to the matter of priority, it is true that the Rule 10b–5 issue was first asserted in the federal court and was not asserted in the state court action until ten days later. However, the counterclaim to which the alleged Rule 10b–5 violation was eventually asserted as a defense, was filed on July 30, 1968 and the Securities Act defense could have been asserted at any time in the state court action during the next three months. The timing of the Rule 10b–5 claim as a primary cause of action or as a defense was within the control and determination of the Bank. While this determination was no doubt properly within the province of the Bank to make, nevertheless there is some weakening of any claim that the federal action should continue simply because the federal issue was first raised in the federal courts. It must have been apparent from shortly after the filing of the counterclaim that in so far as the state action was concerned it would be necessary to meet the counterclaim with the

assertion of an alleged violation of Rule 10b–5.

■ In any event, we do not here decide that priority of the initiation is the sole controlling factor in the exercise of the doctrine of absention. It is of course to be given some significance and it is noted in the matter before us that litigation between the parties was initiated in the state court. It is our opinion, however, that the doctrine of abstention should have greater flexibility than would be indicated by blind and routine adherence to the matter of priority of litigation. Other factors, such as the totality of the issues before the respective courts, the convenience of parties litigant, the prospect of early completion of the litigation and any other aspects which might bear upon the fairness of litigation to all concerned, should be balanced by the court in determining whether to stay the proceedings.

■ Arriving at the conclusion we have that the effect of the order on the motion for abatement entered below is to stay the proceedings in the district court, we now turn to the ruling on the motion to dismiss. As we have already indicated, it is our opinion that since the proceeding below has been stayed on the theory that *all* issues can, and should be, litigated in the state court action, it would be contradictory to sustain the motion to dismiss which would, of necessity, in our view determine one of the very issues which the staying of the proceedings was leaving to the state court for determination.

The Administrator has contended, *inter alia*, in support of its motion for abatement, that granting the motion would avoid potential conflict between the courts and would avoid perplexing questions of res judicata which might arise if the federal case were permitted to proceed concurrently with the state court action. Yet, in proceeding with the motion for dismissal the Administrator, by asking the court to rule on the substantive issues there presented, is in effect asking that the so-called perplexing questions of res judicata be raised. We decline to do so but instead accept the invitation extended by the Administrator to avoid the "perplexing questions of res judicata," leaving the determination of all substantive issues between the parties to the forum where all issues have been presented.

For the foregoing reasons, we are reversing the decision of the district court which sustained the motion to dismiss. In the state court action the parties thereby will have the privilege of full and complete exploration of the Rule 10b–5 issue without any claim that the merits thereof have been determined by litigation between the same parties in the federal court.

■ While the matter was not urged on this appeal, in fairness to the litigants, one other facet of the instant matter is, as stated in Boggess v. Columbian Rope Co., 167 F.Supp. 854, 856 (S.D.N.Y.1958), "whether any substantial procedural disadvantages would result to the plaintiff as a result of the stay of the federal action." In *Boggess* the discovery procedures in the federal courts were more liberal than those of the state court. Therefore, the court conditioned the stay upon the defendant consenting to the use of the federal discovery proceedings. In our opinion this is a salutary proviso which should be applicable in the case before us.

Accordingly, we affirm the ruling of the district court on the motion in so far as it pertains to the motion for abatement, construing this to be a stay of the proceedings in that court, and reverse the order in so far as it sustained the motion to dismiss. We remand the case to the district court for further proceedings not inconsistent with the views expressed in this opinion.