**Louis WEBER and Consumer Magazine, Inc., Plaintiffs-Appellants,**

v.

**CONSUMERS DIGEST, INC., Van Leer Corporation, American Sales Company, and Albert Perry Company, Defendants-Appellees.**

**No. 18232.**

United States Court of Appeals, Seventh Circuit.

March 18, 1971.

Elmer Gertz, Chicago, Ill., for plaintiffs-appellants; Wayne B. Giampietro, Chicago, Ill., of counsel.

Henry L. Mason, Ill, Chicago, Ill., David P. List, Thomas H. Morsch, Chicago, Ill., for defendants-appellees; Leibman, Williams, Bennett, Baird & Minow, Chicago, Ill., of counsel.

Before KNOCH, Senior Circuit Judge, CUMMINGS and PELL, Circuit Judges.

CUMMINGS, Circuit Judge.

In September 1969, plaintiffs filed a two-count complaint against four corporations, two of which were successors to the other defendants. Both counts complained of a June 18, 1964, covenant not to compete requiring plaintiff Louis Weber not to be involved "in any manner with any business anywhere in the Unit-

ed States" similar to the business of the first three named defendants. Count I asserted that the covenant was part of a conspiracy in unreasonable restraint of trade in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1 and 3). Count II alleged that a preliminary injunction issued by the Circuit Court of Cook County, Illinois, enforcing said covenant pending a decision as to its validity violated the Civil Rights Act (42 U.S.C. §§ 1983 and 1988). Both counts claimed $150,000 in damages.[1]

Defendants moved to dismiss the action, asserting that Count I was barred by the four-year statute of limitations contained in Section 4B of the Clayton Act (15 U.S.C. § 15b), and that Count II was barred by the two-year and five-year statutes of limitations contained in Ill.Rev.Stats. (1969), Ch. 83, §§ 15 and 16. As to Count I, defendants alleged that plaintiffs' prior, unadjudicated counterclaim in the Illinois state court suit would afford them a complete remedy. The motion to dismiss also asserted that Count II failed to state a claim upon which relief could be granted because defendants were not alleged to be acting under color of state law, and because the state court's preliminary injunction was not alleged to be a complete nullity.

The district court dismissed the action, holding that Count I was barred by the four-year federal statute of limitations and that plaintiffs had a complete remedy by way of their prior counterclaim in the Illinois state court proceedings. The court also held that Count II was barred by the aforesaid Illinois statutes of limitations and failed to state a claim cognizable under the Civil Rights Act. Since we disagree in some respects, the cause must be reversed and remanded.

I. *The Statutes of Limitations Do Not Bar This Action.*

As to Count I of the complaint, the applicable statute of limitations bars private federal antitrust actions "unless commenced within four years after the cause of action accrued" (15 U.S.C. § 15b). Count I alleged that the conspiracy commenced on June 18, 1964, at the time of the execution of the agreement containing the covenant not to compete. However, the overt acts alleged pursuant to the conspiracy were (1) defendant Consumer's Digest, Inc.'s July 12, 1966, institution of a state court suit seeking an injunction and damages for violation of the covenant not to compete and (2) the obtaining of a preliminary injunction on March 10, 1967. It is well settled that the period of this statute of limitations commences to run from the last overt act of the conspiracy. Zenith Radio Corporation v. Hazeltine Research, Inc., 401 U.S. 321, 338, 91 S.Ct. 795, 28 L. Ed.2d 77. Therefore, it is clear that Count I was not barred.

As to Count II under the Civil Rights Act, the claim is based on the issuance of the preliminary injunction on March 10, 1967. Under Baker v. F & F Investment Corp., 420 F.2d 1191, 1197–1198 (7th Cir. 1970), certiorari denied, 400 U.S. 821, 91 S.Ct. 42, 27 L.Ed.2d 49, and Wakat v. Harlib, 253 F.2d 59 (7th Cir. 1958), the applicable statute of limitations is the five-year period contained in Ill.Rev.Stats. (1969), Ch. 83, § 16, and it did not commence to run until March 10, 1967.[2] Therefore, Count II is also not barred.

II. *Effect of Illinois Counterclaim.*

The district court gave as an additional ground for dismissing Count I

---

1. Because of the trebling provision contained in Section 4 of the Clayton Act (15 U.S.C. § 15), Count I prayed for a $450,000 judgment, together with reasonable attorneys' fees and costs of suit.

2. Jones v. Jones, 410 F.2d 365 (7th Cir. 1969), on which defendants rely, notes

that under Wakat v. Harlib, the five-year statute of limitations applies to a conspiracy under the Civil Rights Act. Paragraphs 1 and 7 of Count II allege this was such a conspiracy.

the fact that plaintiffs have a complete remedy in the Illinois courts by virtue of their April 18, 1969, pending counterclaim there. That counterclaim was brought under the Illinois antitrust laws and seeks the same amount of recovery as Count I of the federal complaint. It is immaterial that the counterclaim is only against Consumers Digest, Inc., for it was based on the same agreement, preliminary injunction, and state court suit as the federal complaint, and there has been no showing that the three other related federal defendants are indispensable parties. Moreover, plaintiffs can seek to add them as counter-defendants if the need should arise. Ill.Rev.Stats. (1969), Ch. 110, § 54.

■ As in Aetna State Bank v. Altheimer, 430 F.2d 750 (7th Cir.1970), the district court should have stayed the federal action pending resolution of the state court counterclaim. If plaintiff should prevail on its counterclaim in the Circuit Court of Cook County, federal relief might not be necessary. Under such circumstances, a stay of the federal proceedings is the appropriate response rather than a dismissal of the complaint. Aetna State Bank v. Altheimer, *supra.*

### III. *The Effect of State Proceedings Upon Count II.*

■ Plaintiffs' claim in Count II of their complaint seeks to raise novel constitutional questions. The thrust of their contention is that the First and Fourteenth Amendment protections of free speech and press preclude, in whole or in part, enforcement of the terms of the restrictive covenant. Under Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, they argue, the state court's preliminary injunction enforcing the restrictive covenant was unconstitutional state action. As a result of the injunction, they alleged'y suffered monetary damage for which they claim to be entitled to relief in federal court. We find it unnecessary to consider whether enforcement of such a covenant in this area by a preliminary injunction involves infringement of constitutional rights. Under the circumstances of this case, we conclude that consideration of this matter by a federal court is unnecessary and improper.

Like the argument approved by the Supreme Court in Shelley v. Kraemer, *supra,* the essence of plaintiffs' Count II is a defense to injunctive relief sought against them under state law. The fact that the defense rests upon constitutional considerations rather than the equitable balancing of common law considerations does not alter the fact that it is inherently a shield against the grant of relief by a state court. Such a defense may and should be interposed as part and parcel of the underlying state court controversy. Moreover, to permit its presentation under the guise of a civil rights action in federal court would undermine the rules barring removal of that entire controversy to a federal forum. See American Well Works v. Layne, 241 U.S. 257, 36 S.Ct. 585, 60 L. Ed. 987.

The nature of the "state action" upon which plaintiffs rest their claim to federal jurisdiction increases our reluctance to assume jurisdiction of matters currently being litigated in state courts. Assuming plaintiffs' constitutional contentions have merit, the opportunity exists within the state courts for plaintiffs to obtain relief and nullify the very "state action" of which they complain. Should the state courts prove unresponsive, plaintiffs may still seek ultimate redress on review by the Supreme Court of the United States. Assumption of jurisdiction by the district court would not only short-circuit these usual channels, it would sanction a collateral attack upon the judgment ultimately to be reached in the state court. The Civil Rights Act was not designed to provide such an unusual remedy. Cf. Smith v. Village of Lansing, 241 F.2d 856, 859 (7th Cir. 1957).

Accordingly, we hold that the district court properly dismissed Count II of the complaint. The judgment of the court below is affirmed in part, reversed in part, and remanded with directions to stay disposition of the claims raised by Count I of the complaint until completion of proceedings in the state courts.