Marjorie ALLEN, et al.

v.

Arthur W. KOON, III, et al.

Civ. A. No. 89–1525.

United States District Court, E.D. Louisiana.

Aug. 23, 1989.

Lee S. McCollister, Harahan, La., for plaintiffs.

Grant & Barrow, Jo Ellen McMillen, Gretna, La., for Arthur W. Koon, III, Gerard A. Heslin, Leon M. Toups, Josephine A. Termine, Margaret Townsend, and Thomas A. Carrigee.

Christopher E. Lawler, Metairie, La., for Linwood Hoffman, and Jennifer Hoffman.

ORDER AND REASONS

FELDMAN, District Judge.

On October 31, 1988, plaintiffs filed a civil rights action in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana. Plaintiffs alleged that on April 22, 1988, Thomas Allen, a student at Riverdale High School was unlawfully strip searched by the school disciplinarian, a Parish School Board employee, on property under the control of the School Board, and in the presence of another student and another School Board employee. The petition further alleged that the School Board employee stared at the plaintiff in a threatening manner and orally threatened him. Plaintiff contended that these actions violated his rights under the 4th, 5th, 6th, 10th, 13th and 14th amendments to the U.S. Constitution; under 42 U.S.C. § 1983; under the Louisiana Constitution, Article 1, sections 1, 2, 3, 5, 9, 12, 13, and 14; and that these actions damaged plaintiff's reputation in the community. After plaintiff filed his state court petition, the parties commenced discovery, filing interrogato-

ries and noticing depositions. Several amended petitions have been filed and discovery hearings have been held, but it is unclear from the papers whether a trial date has been set. The federal suit has no trial date yet.

On April 7, 1989, plaintiff filed suit in federal court against the same defendants. This complaint also alleged a deprivation of Constitutional rights, and rights under 42 U.S.C. § 1983, based on the allegedly unlawful strip search conducted on April 22, 1988.

Defendants invoke *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and urge that this Court should abstain from proceeding because plaintiffs have filed parallel, essentially identical, federal and state actions. Thus, defendants move this Court to stay or dismiss this federal action pending resolution of the parallel state claim.

### I. *Colorado River Abstention: Historical Background*

#### A. *Reluctance to Abdicate Jurisdiction*

Almost from the beginning of our jurisprudence, the Supreme Court has viewed abdication of jurisdiction with a skeptical eye. The oft-quoted dictum of Chief Justice John Marshall in *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 5 L.Ed. 257 (1821) formed the foundation of abstention case literature:

> It is most true that this court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction if it should.... We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution.

*Id.* 19 U.S. (6 Wheat.) at 404. Subsequent cases held that a federal court had no authority to abdicate its jurisidiction because of a pending state action, on the theory that Congress, in providing for federal subject matter jurisdiction, conferred on a plaintiff an "absolute right" to federal court resolution of claims within that juris-

diction. *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910). *See generally*, Note, "Federal Court Stays and Dismissals in Deference to Parallel State Court Proceedings: The Impact of Colorado River," 44 *U.Chi.L.Rev.* 641 (1977).

However, beginning with *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Supreme Court began to examine, and adopt, the notion of federal court abstention. In *Pullman,* the Supreme Court held that a federal court could decline jurisdiction in cases raising federal constitutional questions where questions of unsettled or ambiguous state law existed that might moot or alter the federal issue.

In *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court expanded the abstention doctrine. There the Court held that a federal court should decline to exercise jurisdiction where the reasonableness of a state agency's decision was at issue, and the state had in place a system of review for a complex state regulatory area. The *Burford* Court reasoned that federal court involvement would disrupt the state's attempt "to establish a coherent policy with respect to a matter of substantial public concern."

Finally, in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that a federal court should not enjoin a pending state criminal proceeding, absent harassment, bad faith, or prosecution under a patently invalid state statute. The rationale supporting the *Younger*-type abstention was that "our federalism system" necessitated respect for federal-state comity. Thus, early federal abstention doctrine focused on the interest of positive federal-state relations.

#### B. *Abstention Comes Into Favor: Judicial Economy Rationales*

As the Supreme Court expanded the abstention doctrine, lower courts began to create their own abstention rationales, premised largely on the need to avoid duplicate litigation in federal and state courts.

For example, in *Aetna State Bank v. Altheimer*, 430 F.2d 750 (7th Cir.1970), our sister circuit held that where parallel state and federal suits involved the same issues, a federal court had the power to stay proceedings, and that this power was "incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* at 755. *See also, Amdur v. Lizars*, 372 F.2d 103, 106 (4th Cir.1967).

When the Supreme Court decided *Colorado River* in 1976, it rejected this "docket control" rationale for abstention. Although *Colorado River* did involve parallel federal and state litigation, the Court was careful to delineate the special circumstances in which such parallel litigation would favor abstention; the mere possibility of duplicative litigation alone was not sufficient. Thus, in *Colorado River* the Supreme Court reiterated a narrow view of abstention.

### C. *The Colorado River Test*

*Colorado River* involved a federal action by the United States, pursuant to 28 U.S.C. § 1345, to determine water rights in Colorado Water Division No. 7. The U.S. named approximately one thousand water users as defendants. One of these defendants filed suit in Colorado state court, serving the United States pursuant to the McCarran Amendment. The McCarran Amendment, 43 U.S.C. § 666, permitted joinder of the U.S. as a party defendant "in any suit for the adjudication of rights to the use of water" where the U.S. was the apparent owner and the court had jurisdiction to decide the federal claims. The state suit sought determination of all federal government rights in Colorado waters, including claims filed in other State Water Divisions.

The district court dismissed the federal action, holding that the abstention doctrine required deference to parallel state proceedings. The Tenth Circuit reversed, ruling that the federal court had jurisdiction under 28 U.S.C. § 1345. The Supreme

Court reversed again, holding that the district court had correctly abstained.

The Supreme Court re-emphasised the general principle that " 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction....' " 424 U.S. at 817, 96 S.Ct. at 1246. However, the Court held that absent "weightier considerations of constitutional adjudication and state-federal relations", a federal action could be dismissed because of concurrent proceedings, but only in "exceptional circumstances." *Id.* at 818, 96 S.Ct. at 1246.

The four factors specifically delineated by the Court as favoring abstention were: 1) jurisdiction by the state over any *res* or property at issue; 2) inconvenience of the federal forum relative to the state forum; 3) desirability of avoiding piecemeal litigation; and 4) the order in which jurisdiction was obtained. However, the Court cautioned that these factors must always be balanced against the "virtually unflagging" obligation of federal courts to take jurisdiction, and "only the clearest of justifications will warrant dismissal." *Id.* at 819, 96 S.Ct. at 1247.

### D. *After Colorado River: The Abstention Reins Loosen*

Despite the Supreme Court's pronouncement that *Colorado River*-type abstention was to be used only in "exceptional circumstances", lower courts liberally construed the doctrine, returning to the old rationale of judicial economy and docket control. For example, in *Private Medical Care Foundation, Inc. v. Califano*, 451 F.Supp. 450 (W.D.Okla.1977), plaintiff sued in federal court for declaratory and injunctive relief against the Secretary of Health and Human Services and the Food and Drug Administration, challenging the labelling of estrogens. Two days later, another plaintiff sued in state court, raising identical claims.

The federal court granted a stay, noting that the two suits involved identical issues that the state court could resolve; that the state proceeding had advanced farther than

the federal proceeding; and that abstention would prevent duplication of effort. The court considered these factors sufficient to constitute the "exceptional circumstances" required by *Colorado River.*

The Supreme Court seemed to add its imprimatur to this expansion of *Colorado River*-type abstention in *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978). In *Calvert,* American Mutual Reinsurance Company sued Calvert Fire Insurance Company in an Illinois state court, seeking a declaration that a reinsurance membership agreement was still in effect. Calvert argued that the agreement was illegal under federal and state securities laws, including the Securities Exchange Act of 1934, over which federal courts have exclusive jurisdiction. Calvert then sued in federal district court, claiming a violation of the 1934 Act and other securities laws mentioned in its state court answer.

The district court stayed the federal court's proceedings pending completion of the state court action. The court did hold, however, that the state court could determine Calvert's defense under the 1934 Act. The Seventh Circuit, on a writ of mandamus, ordered the district court to proceed with the federal trial of the 1934 Act claim.

On appeal, Justice Rehnquist, writing for the plurality, acknowledge that the pendency of a state court action did not bar federal court action on the same matter; however, Rehnquist added, "it is equally well settled that a district court is under no compulsion to exercise that jurisdiction, where the controversy may be settled more expeditiously in the state court." 437 U.S. at 662–63, 98 S.Ct. at 2557–58, *quoting Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942). Justice Blackmun concurred only in the result, stating that *Calvert* and *Brillhart* were distinguishable because *Brillhart's* was a declaratory judgment action.

The ultimate result of *Calvert,* however, was that a federal court could abstain and defer to parallel state court proceedings whenever the possibility of duplicate litiga-tion arose. The dissenters noted that *Calvert* was a departure from the "exceptional circumstances" test pronounced in *Colorado River.*

## II. *Moses Cone: The Pendulum Swings Back*

In *Moses Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court returned to its more restrictive abstention approach. The case involved a contract dispute between a North Carolina hospital and an Alabama contractor. The hospital sued in North Carolina state court, seeking a declaratory judgment that no arbitration right existed under its contract. The contractor then filed suit in the Middle District of North Carolina, seeking an order to compel arbitration under Section 4 of the United States Arbitration Act.

The district court stayed the federal action pending the outcome of the state court suit because both suits involved the arbitrability of the contractor's claims. The Fourth Circuit reversed *en banc* and directed the district court to order arbitration. The Supreme Court affirmed, finding abstention inappropriate on these facts.

The Supreme Court emphasised that *Colorado River* abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before ... [and] can be justified ... only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." 460 U.S. at 14, 103 S.Ct. at 936.

The Court stated that *Calvert* had not broadened *Colorado River* abstention, nor weakened its requirements; rather, the Court stated, *Calvert* turned on the higher reversal standard of a mandamus action. Moreover, only four justices had supported Justice Rehnquist's view of abstention; the other five had reaffirmed *Colorado River's* exceptional circumstances test. *Id.* at 17, 103 S.Ct. at 937.

The *Moses Cone* Court reiterated this test, holding:

the decision whether to dismiss a federal action because of parallel state court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.

*Id.* at 16, 103 S.Ct. at 937. Applying the *Colorado River* factors to the case before it, the Court found that abstention was not appropriate. Neither court had assumed jurisdiction over a *res;* the federal forum was not inconvenient; the federal law at issue necessitated a piecemeal approach; and neither court had made greater progress than the other on its case. *Id.* at 20, 103 S.Ct. at 939.

The Court also added two factors to the *Colorado River* test. First, the Court held that federal question jurisdiction weighed against abstention. The Court explained that a federal court's "task in [federal question cases] is not to find some substantial reason for the *exercise* of federal jurisdiction ... rather the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Id.* at 25–26, 103 S.Ct. at 941–42 (emphasis in original). Thus, the Court held, "the presence of federal-law issues must always be a major consideration weighing *against* surrender." *Id.* at 26, 103 S.Ct. at 942 (emphasis in original). Second, the Court held that where the state court is unable to provide the same relief as a federal court, abstention is appropriate.

Thus, *Moses Cone* clarified the standard for *Colorado River*-type abstention. The Court re-emphasised the narrow scope of the abstention, adding two more factors to be balanced against the assumption that federal courts will retain jurisdiction in federal cases.

### III. *After Moses Cone: Colorado River Abstention Today*

Given the past history of *Colorado River* abstention, it is not surprising that defendants here argue that the duplicative litigation filed in both state and federal court, in which plaintiffs allege the same claims against the same parties, provides an ideal model for federal court abstention. However, the current view in this Circuit follows the more restrictive abstention approach of *Moses Cone*, particularly when one considers the serious federal questions raised in this dispute.

For example, in *Evanston Insurance Co. v. Jimco, Inc.*, 844 F.2d 1185, 1193 (5th Cir.1988), an insurer who had been sued in more than 20 different state court actions filed a declaratory judgment action in federal court seeking a declaration of non-coverage. The district court abstained because the pending state court actions involved the same issues. The district court held that the complete similarity of issues in the federal and state cases constituted an "exceptional circumstance" warranting abstention under *Colorado River*. The Fifth Circuit reversed.

Judge Rubin noted that although the district court had applied the six factor test of *Moses Cone*, it had failed to " 'heavily weigh' the balance in favor of exercising jurisdiction." Judge Rubin criticised the district court for confusing the concepts of "duplicative" and "piecemeal" litigation. Under *Moses Cone*, only piecemeal litigation favors abstention. 844 F.2d at 1192. Although the disputes in *Evanston Insurance* seem to have been highly focused on state law issues, the Fifth Circuit frowned on abstention.

In this case, the six-factor *Moses Cone* test weighs heavily against abstention. This case does not involve any res or property over which either court has taken control. The federal forum is no more or less convenient than the state forum, as all the parties reside in the New Orleans area and both courts are located there as well.

The danger of piecemeal litigation is slight. Defendants stress that the two proceedings are completely duplicative; however, this is not a strong consideration, because the parties will not take the same discovery twice, and because no trial dates

have been set. Although the state court obtained jurisdiction first, neither case has progressed far. Moreover, priority of jurisdiction is only one of several factors the Court must consider.

Finally, and of central concern, serious federal constitutional issues have been raised, which seems to place this case even more firmly within the reach of *Evanston Insurance.*

This Court places no small faith in the doctrine of abstention. See *Robichaux Construction, Inc. v. Solid Waste Disposal, Inc., et al,* 707 F.Supp. 242 (E.D.La. 1989); *Highlands Insurance Co. v. A.E. Investments, Inc.,* 637 F.Supp. 213 (E.D. La.1986); *Canadian Universal Insurance Company v. Thibaut Oil Company,* 622 F.Supp. 1055 (E.D.La.1985). But the circumstances here dictate that *Colorado River* does not instruct that abstention is appropriate. Accordingly the motion to abstain is DENIED.