FOCUS RADIO, INC., a Michigan
Corporation, Plaintiff,

v.

SUMMIT RADIO, INC., an Indiana
Corporation, Defendant.

No. 93–CV–75350–DT.

United States District Court,
E.D. Michigan,
Southern Division.

April 25, 1994.

David K. Tillman, Butzel Long, Detroit, MI, for plaintiff.

Joseph J. Shannon, Julia Blakeslee, Jaffe, Raitt, Heuer & Weiss, Detroit, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

## I. INTRODUCTION

This matter is before the Court on defendant/counterplaintiff's Motion for Entry of Order to Stay Proceedings, pending the outcome of state court litigation. Plaintiff/counterdefendant has filed a response brief, to which defendant has replied.

The facts and legal arguments are adequately presented in the briefs, and the deci-sional process will not be aided by oral arguments. Therefore, pursuant to E.D.Mich.Local R. 7.1(e), this Court ORDERS that the instant motion be decided upon the briefs submitted, without the Court entertaining oral arguments. For the reasons stated below, defendant's motion is DENIED.

## II. BACKGROUND

### A. Factual Background

Plaintiff, Focus Radio, Inc. ("Focus") is a Michigan corporation and owner of WUBU–FM, a radio station in South Bend, Indiana. Defendant, Summit Radio Inc. ("Summit"), is an Indiana corporation which owns and operates WGTC–FM in New Carlisle, Indiana. Focus intended to enter the Indiana radio broadcasting market by purchasing a construction permit for radio facilities located in South Bend, Indiana.

The parties entered into a marketing agreement ("Agreement") on February 10, 1993, whereby Summit agreed to act as Focus' local marketing agent for selling radio advertising to be broadcast on Focus' radio facilities in South Bend. Summit also agreed to provide office and studio space in South Bend, Indiana, from which Focus could broadcast via the South Bend tower. The Agreement was for an initial term of five years, with renewal options. The Agreement specified that Michigan law would govern its construction.

Summit "terminated" the Agreement on November 23, 1993 due to an alleged material breach of the Agreement by Focus. Focus subsequently alleged Summit had materially breached the Agreement and threatened litigation if Summit did not promptly perform by December 20, 1993. The parties remained at an impasse and civil litigation commenced.

### B. Procedural Background

On December 23, 1993, Focus filed its complaint in U.S. District Court for the Eastern District of Michigan. Twenty-nine days later, on January 21, 1994, Summit filed a state complaint in the St. Joseph Superior Court of the State of Indiana. The state complaint

alleged breach of contract, theft of property, conversion, and fraud. In addition, Summit requested that the Indiana court hold an eviction hearing with respect to Focus' use of Summit's office and studio space.[1] On February 14, 1994, Summit filed the instant motion for entry of an order to stay the proceedings in this Court, pending the outcome of the Indiana state court litigation.

## III. OPINION

### A. Standard of Review

Summit argues that federal courts have the discretion to stay federal proceedings pending the outcome of a state court proceeding which involves the same parties and the same or controlling issues, so as to avoid unnecessary duplication of judicial efforts. To support its argument, Summit relies upon *Aetna State Bank v. Altheimer*, 430 F.2d 750 (7th Cir.1970), in which the Seventh Circuit held that the power to sustain proceedings was incidental to the power in the district court to control the disposition of the cases on the docket with the economy of time and effort for all parties concerned. *Id.* at 755.

However, in 1976, the Supreme Court thoroughly analyzed the application of federal abstention with respect to contemporaneous exercise of concurrent jurisdiction by federal and state courts in *Colorado River Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[2] With respect to the doctrine of abstention in general, the Court in *Colorado River* stated:

> Abstention from the exercise of federal jurisdiction is *the exception, not the rule.* 'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, *is an extraordinary and narrow exception to*

*the duty of a District Court* to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be *justified under this doctrine only in the exceptional circumstances* where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

> '[I]t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it.'

*Colorado River*, 424 U.S. at 813–814, 96 S.Ct. at 1244 (citations omitted) (emphasis added).

The Supreme Court decisions have recognized three abstention categories which relate to constitutional adjudication and regard for federal-state relations. *Colorado River*, 424 U.S. at 814–16, 96 S.Ct. at 1244–45. First, courts have recognized abstention in cases where a federal constitutional issue may be made moot or presented in a different posture by a state court determination. Courts have also recognized abstention in cases which present a difficult question of state law, where a federal decision would interfere with a state's attempt to establish policy on matters of important state concern. Finally, abstention in instances where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked to restrain a state criminal proceeding. *Id.*

■ In *Colorado River*, the Court recognized a fourth category of abstention and held that a federal district court, in "exceptional" circumstances, may stay or dismiss an action involving contemporaneous exercises of concurrent state and federal jurisdiction. Federal courts have a "virtually unflagging" obligation to exercise jurisdiction, yet may exercise abstention in instances which rest on

---

1. According to Focus, the eviction hearing in Indiana state court was scheduled for February 22, 1994, yet was adjourned without a date.

2. *Aetna State Bank*, which Summit cites as authority, was expressly overruled in *Calvert Fire Ins. Co. v. Will*, 560 F.2d 792 (7th Cir.1977) on the grounds that the Supreme Court's analysis of concurrent jurisdiction of state and federal courts in *Colorado River* was controlling. Although *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655,

98 S.Ct. 2552, 57 L.Ed.2d 504 (1978) reversed *Calvert* in a 5–4 decision, seemingly modifying the test outlined in *Colorado River*, the Court later rejected this argument in *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) and held the "exceptional circumstances" test in *Colorado River* was controlling. *See* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4247.

"considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246.

■ The Court listed six factors to be considered when deciding whether to dismiss or stay a federal claim in deference to a parallel state court proceeding: (1) whether federal or state law provides the basis for decision of the case; (2) whether either court has exercised jurisdiction over any *res* or property; (3) whether the federal forum is less convenient to the parties; (4) avoidance of piecemeal litigation; (5) the order in which jurisdiction was obtained; and (6) the state court's ability to protect federal rights. *Heitmanis v. Austin*, 899 F.2d 521, 527 (6th Cir.1990) (*citing Moses H. Cone Memorial Hospital*, 460 U.S. 1, 103 S.Ct. 927 (1983)). Moreover,

[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a *careful balancing* of the important factors as they apply in a given case, *with the balance heavily weighted in favor of the exercise of jurisdiction.*

*Cone, supra,* 460 U.S. at 16, 103 S.Ct. at 937 (emphasis added). Accordingly, the Court now undertakes such an analysis and balancing.

## B. Analysis

■ In order to apply the *Colorado River* doctrine, a parallel state court proceeding must exist. *Crawley v. Hamilton County Comm'rs.,* 744 F.2d 28, 31 (6th Cir.1984). In the instant case, the proceedings in the federal and state courts are identical, with the exception of Summit's additional claim for immediate possession in Indiana State Court. In addition, both claims involve the same parties. Thus, a parallel state proceeding is present and the factors outlined in *Colorado River* control.

3. *Focus claims that the property which it is entitled to use and occupy at Summit's South Bend facilities consists of: (1) a single desk in Summit's offices; (2) a 2′ × 2′ shelving space in an*

## C. Evaluation of the Factors

### 1. Whether Federal or State Law Provides the Basis For the Decision

■ The Supreme Court held in *Cone*, "[a]lthough in some rare circumstances the presence of state law issues may weigh in favor of the surrender, the presence of federal law issues must always be a major consideration weighing against surrender." *Cone*, 460 U.S. at 26, 103 S.Ct. at 942. The instant case does not involve any questions of federal law, but rather involves issues of state law.

The state law issues involved, however, are routine—breach of contract, fraud, conversion, and theft of property. None of these state issues constitute a "rare" or exceptional circumstance where a district court should decline jurisdiction. Nor are any of these issues a type which the district court is incapable of deciding. *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir.1990). The basis of law in the case, therefore, does not weigh in favor of granting a stay.

### 2. Whether Either Court Has Assumed Jurisdiction Over a *Res* or Property

Summit contends that the Indiana State Court has exercised jurisdiction over the *res* because it claims Focus is in possession of Summit's property.[3] Yet, no significant proceedings have occurred in the Indiana court other than the filing of the complaint and answer and an indefinite adjournment of a hearing regarding Summit's ejectment motion. The Supreme Court has held that "the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246.

However, in the cases relied upon by the Court in outlining the *res* exception to exercising federal jurisdiction, the state courts had achieved *custody or control* over the property in question, either by means of a judicial procedure or because the suit was of

equipment room; and (3) an additional 2′ × 2′ space in Summit's studios. Affidavit of Abraham Thompson, p. 2.

such a nature[4] that the court needed to control the property in question in order to give effect to its jurisdiction. *See Donovan v. City of Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964); *Princess Lida v. Thompson,* 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939); *United States v. Bank of New York & Trust Co.,* 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936).

■ The case at bar is readily distinguishable from the types of cases in which *Colorado River* abstention is found appropriate. The Indiana court, as of the time of the filing of Summit's motion to stay proceedings, had not taken action to assume jurisdiction over any property of Focus. The only action taken on record is the filing of the complaint and answer. In addition, the claims of Summit over the property of Focus are not of such a nature that the state court must *control* the property in order to give effect the state court's jurisdiction. Thus, the Indiana court has not exercised jurisdiction over the *res* as contemplated by the Court in *Colorado River.* As a result, this factor weighs against granting a stay of the federal proceedings.

### 3. Whether The Federal Forum is Inconvenient

Summit argues in support of its motion to stay proceedings that the inconvenience of the federal forum in Detroit, Michigan, is so great as to warrant abstention. Summit supports its claim by noting that it is an Indiana corporation with principle place of business in Indiana; that the contract was to be performed in Indiana; that documents, records and potential witnesses are in Indiana; and that Focus does business in Indiana.

■ Focus argues that South Bend is within 200 miles of Detroit, and is easily accessible by both air and highway. In fact, the Ninth Circuit held that a distance of 200 miles between the state and federal forum was a fair distance, but not one sufficiently great so as to weigh in favor of abstention. *Travelers Indem. Co. v. Madonna,* 914 F.2d 1364 (9th Cir.1990).

Although Summit may incur some inconvenience from litigation in Detroit, the inconvenience is not to an extent which can overcome the weighted balance in favor of this federal court exercising its jurisdiction. Thus, this factor weighs against granting a stay.

### 4. Whether Abstention Would Avoid Piecemeal Litigation

In *Colorado River,* the Supreme Court held that "[g]enerally as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to the proceedings concerning the same matter in the Federal court having jurisdiction' ". *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246. "A correct evaluation of this factor involves considering whether exceptional circumstances exist which justify special concern for piecemeal litigation". *Travelers,* 914 F.2d at 1369 (9th Cir.1990).

Indeed, in *Colorado River,* the Court found exceptional circumstances which favored abstention; that is, a federal act which created a federal policy of avoiding piecemeal adjudication of river water rights, and an established state system for adjudication and management of water rights. *Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247. The case at bar is easily distinguishable.

■ There simply are no exceptional circumstances which give rise to the dangers of piecemeal litigation, as articulated by the Court in *Colorado River.* The claims of the parties involve ordinary contract and tort claims, which the federal court is entirely capable of deciding. Unlike *Colorado River,* where the danger of piecemeal litigation was clear, due to the types of claims involved, no such underlying dangers exist here. Concurrent parallel actions alone do not present the danger of piecemeal litigation needed in order to grant abstention.

In addition, doubts as to whether a particular factor exists in the abstention determination should be resolved against a stay, for only the clearest of justifications will warrant abstention. *See Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247. Accordingly, this fac-

---

4. i.e.: suits brought to marshal assets, administer trusts or liquidate trusts. *United States v. Bank of New York Co.,* 296 U.S. 463, 477, 56 S.Ct. 343, 347, 80 L.Ed. 331 (1935).

tor weighs in favor of continued exercise of federal jurisdiction.

### 5. The Order in Which Jurisdiction Was Obtained

In this case, Focus filed its federal complaint first on December 23, 1993. Summit filed the state complaint twenty-nine days later on January 21, 1994. "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Cone,* 460 U.S. at 21, 103 S.Ct. at 940. Both parties concede that no substantial progress has been made in the state action, other than filing of the original pleadings. The federal action before this Court consists of only the original pleadings, the instant motion and response, and an unanswered motion to dismiss Count III. Thus, the fact that the federal claim was filed first, combined with the lack of substantial progress in the state action, weighs in favor of this Court's continued exercise of jurisdiction.

### 6. State Court's Ability to Protect Federal Rights

The instant case involves the adjudication of contract and tort rights based, at least primarily, in common law. Thus, specific federal rights are not implicated. If there is concern that the state court could not give an out-of-state defendant "a fair shake," it has not been voiced, and is therefore, seemingly limited. Accordingly, this factor does not bear on the Court's decision.

### IV. CONCLUSION

Although this case involves the presence of a parallel state action and thus invokes the applicability of the "exceptional circumstances" abstention doctrine outlined in *Colorado River,* Summit has failed to show that any exceptional circumstances exists which would justify abstention of this Court in light of the Court's "unflagging" duty to exercise jurisdiction.

A review of the six factors outlined in *Colorado River* reveals that four of the six factors weigh in favor of a denial of a stay—and the continued exercise of federal juris-diction by this Court—while none of the factors weighs clearly in favor of granting a stay. The Court has not found any one factor determinative. Rather, it is after the required balancing that the Court finds the factors weigh, cumulatively, in favor of denial of defendant's motion.

Therefore, IT IS ORDERED that Summit's Motion for Entry of Stay, pending the outcome of state court litigation is DENIED.

IT IS SO ORDERED.